## DAVID H. BILDER

### *v.*

## EDGAR S. ROBINSON.

[Decided August 17th, 1907.]

1. A purchaser at an execution sale of the title of the debtor in real estate, held by him and his wife as tenants by the entirety under a conveyance executed after the passage of the Married Woman's act, acquires a freehold, and the sheriff's deed gives him the same title which a deed executed by the debtor would have given.

2. A conveyance of land, after the passage of the Married Woman's act, to husband and wife, creates in them an estate in entirety, gives to each a right to a half of the rents and profits, and vests in each a freehold estate corresponding to the rights of each.

3. Courts of equity are averse to appointing receivers of land held by tenants in common, who cannot agree on the management of their estate, though receivers have been appointed, where the sole object was to secure a receiver and the collection and equitable division of the rents and profits.

4. Where a purchaser at an execution sale of the title of the debtor in realty, held by him and his wife under a conveyance executed after the passage of the Married Woman's act, is excluded by the debtor and his wife from participating in the rents, and the debtor and his wife, who are insolvent, collect the rents, the purchaser may obtain a decree for an accounting, the payment to him of his share of the rents and the appointment of a receiver.

5. A bill by one tenant in common for the appointment of a receiver, because of his exclusion from the possession and enjoyment of the land held in common, may be amended on his application so as to contain a prayer for partition.

On motion for an injunction and receiver. Heard on bill and affidavits, and answering affidavits.

*Mr. David H. Bilder, pro se,* for the motion.

*Mr. Waller R. Hudson, contra.*

STEVENSON, V. C.

The conveyance of land in question was made to the defendants in 1903, describing them as "Edgar S. Robinson and Ottie E. Robinson, his wife," without any other words which throw light upon the character of the estate which the grantees took. They became tenants of an estate in entirety. In 1906 the Paterson Consolidated Brewing Company recovered a judgment against Edgar S. Robinson, upon which the sheriff levied upon "all the right, title and interest of the said Edgar S. Robinson, in and to," the said land, and thereupon such right, title, &c., were sold at sheriff's sale and conveyed to the complainant by sheriff's deed, dated September 28th, 1906. The bill charges that the complainant is entitled to receive one-half of the rents in question from the date of his deed, but that the defendants, who are insolvent, totally exclude him from possession and refuse to account for his share of the rents which they, the defendants, have collected since the complainant received his deed from the sheriff. The bill insists that the defendants were

"seized in fee-simple of an estate by the entirety," and that "the defendant Edgar S. Robinson became entitled to one-half the rents," and that the complainant, by virtue of his deed from the sheriff, succeeded to all the rights of the said Edgar S. Robinson.

The bill prays that a receiver may be appointed "preliminarily and permanently to receive the rents, issues and profits of the said premises for the benefit" of the complainant, "anu all other persons having any legal interest therein," that such rents may be divided, &c., and that the defendants may make discovery of prior rents collected since September 28th, 1906, the date of the sheriff's deed to the complainant, and that an account may be taken of the rents, &c.

While the bill of complaint sets forth all the facts upon which any possible rights of the complainant must be based, it does not undertake to define, nor has counsel for complainant in his argument undertaken to define, the legal nature of the right which the judgment debtor, the husband, had to receive one-half of the rents, issues and profits of the land, which right the bill claims passed to the complainant by the sheriff's deed. It was urged that the complainant is without remedy for the enforcement of his peculiar right in a court of law, and hence must find his remedy in a court of equity. It was not insisted on behalf of the complainant that the deed from the sheriff passed a definite legal estate in the land. It seems to be plain, however, that no right to receive the profits of land not connected with a legal estate in the land is leviable upon a common law execution. The thing that was, in fact, levied upon by the sheriff and sold and conveyed to the complainant was "the right, title and interest" of the husband in this land. Either a common law estate in lands passed by this sheriff's deed, or else the complainant took nothing whatever. This is not a bill filed by the Consolidated Brewing Company, the judgment creditor, in aid of execution to reach assets which have not been levied upon and which, in fact, were non-leviable. In order to give the complainant any standing in this court on this bill it must appear that he has acquired an estate in the lands in question, and, as no means whereby he could have

acquired anything but a strictly legal estate are suggested, we are brought face to face with the very narrow alternative that the complainant either holds some legal estate in these lands or holds no interest in them whatever.

It seems to be settled beyond question in New Jersey that the complainant, under the judgment and execution against the husband, acquired a freehold estate in this land, although éxactly what the extent of such estate may be, whether an estate for life or a sort of conditional or determinable fee, seems to be a matter still open for argument and determination. *Washburn* v. *Burns*, 34 *N. J. Law* (5 *Vr.*) 18 (1869) ; *Den* v. *Gardner*, 20 *N. J. Law* (*Spenc.*) 556, 558 (1846).

In order to ascertain the exact nature of the complainant's legal estate we must first ascertain what legal estate the husband held, and to what extent such estate was capable of being levied upon and sold under a judgment recovered against him in a court of law. All the authorities agree that during the joint lives of the husband and wife the husband, according to the common law, was "entitled to the use and possession of the property," and that he could transfer his interest, and, according to the great weight of authority, the same could be seized and sold under execution against him. Whether the husband could convey an estate in fee which his grantee would hold subject to the wife's right of survivorship, is a matter about which there seems to be some difference of opinion, and also great vagueness of statement among the authorities. Inasmuch as the husband, in theory of law, held the entire estate in fee, and, unlike the wife, was under no general incapacity to make conveyances of land, it would seem to follow that the husband could, by his deed, convey the estate which he held, viz., an estate in fee subject only to be defeated in case his wife should survive him. There are authorities which distinctly declare the power of the husband to make such a conveyance. *1 Washb. Real Prop.* (6th ed.) 913; *Freem. Co-ten. & P.* (2 ed.) § 75; *Ames* v. *Norman*, 4 *Sneed* (36 *Tenn.*) 683 (1857) ; *Berrigan* v. *Fleming*, 2 *Lea* (70 *Tenn.*) 271 (1879).

Of course, we are not considering the effect which the husband's deed may have to pass an after acquired estate by way

of estoppel. The point under consideration is the effect of the deed at the time when it is delivered—the extent and nature of the estate which it then passes to the grantee.

The courts of the State of New York seem to have settled the law of that state in favor of the right of the husband to convey, not only a life estate, but the fee subject to the wife's right of survivorship, but the decisions apparently are based upon the statute of the State of New York in relation to the conveyance of estates in expectancy. *Hiles* v. *Fisher, 57 Hun 229 (1893)* ; *S. C. on appeal, 144 N. Y. 306 (1895)*.

The sheriff's deed to the complainant in this case passed the same title which a deed of bargain and sale executed by the judgment debtor, Mr. Robinson, would have passed. *3 Gen. Stat. p. 2980 § 7; P. L. 1799 p. 486 § 12; 1 Nev. 280; Hackensack Savings Bank* v. *Morse, 46 N. J. Eq. (1 Dick.) 161; Brady* v. *Carteret Realty Co., 67 N. J. Eq. (1 Robb.) 641.*

It may be noted, however, that our statute authorizing the transfer of estates in expectancy is made inapplicable by an express proviso to sales of real estate under executions. *P. L. 1851 p. 282; 1 Gen. Stat. p. 881 § 138.*

It will not be necessary in this case, in my opinion, to determine the exact extent of the freehold estate which the complainant would have taken under the sheriff's deed to him prior to the act of 1852, in relation to married women. Nor is it necessary to determine the extent of the estate which the complainant now holds. It is settled law that prior to our legislation in regard to married women the complainant under the common law would have taken at least a freehold estate during the joint lives of the husband and wife, these two defendants. This freehold estate, if it be considered disassociated from the estate in the entire fee, which the husband also held in theory of law, corresponds exactly with the freehold estate which the husband took in all lands of which the wife alone was seized. It is equally well settled that the estate in fee which the husband held had all the qualities of an absolute estate upon the death of the wife in the lifetime of the husband, and may be said, without going into the metaphysics of the situation, to come to an end and disappear wholly upon the wife surviving

the husband. Whether apart from the benefit of any estoppel in the husband's deed, and of any statutory authorization for the conveyance of estates in expectancy, the husband's conveyance of all his right, title and interest would or would not transfer to the grantee the husband's estate in fee subject to be defeated by the survivorship of the wife, is a point which I do not think necessary to decide in this case. Assuming that such estate would so pass by the voluntary conveyance of the husband, the further question whether it would also pass by a sheriff's deed under a judgment against the husband, may also be left undecided.

Whatever may be the true view as to the status of the fee of land held by a husband and wife as tenants in entirety, it seems to me that the nature and extent of their respective interests and estates during their joint lives have been rendered sufficiently definite and certain for all present purposes by the decision of the court of errors and appeals in the case of *Buttlar* v. *Rosenblath, 42 N. J. Eq. (15 Stew.) 651 (1887).* At first the view seems to have prevailed that the Married Woman's act of 1852, if logically applied, had the effect to abolish the ancient estate by the entirety and to substitute for the same the ordinary tenancy in common. *Kip* v. *Kip, 33 N. J. Eq. (6 Stew.) 213 (1880); Rosenblath* v. *Buttlar, 7 N. J. L. J. 143 (1884).* The decisions in this state and in other states, in law and in equity, dealing with the effect of legislation in regard to married women, I think admonish us to be cautious in drawing what we think are logical inferences from the establishment of these new statutory rules. In the case of *Buttlar* v. *Rosenblath,* above cited, the court of errors and appeals held that our New Jersey legislation in regard to married women has not abolished the estate in entirety, and does not "change or modify in anywise the signification or effect of terms used in common-law conveyances." The estate in entirety still remains, but the married woman is no longer obliged to surrender to her husband the entire rents and profits of the land. The husband has a right to one-half and the wife has a right to the other half. Creditors of the husband no longer can appropriate the entire rents and profits, but they can appropriate the husband's share. The

opinion of the court at the conclusion expressly states that "the just construction of this legislation [Married Woman's act] and the one in harmony with its spirit and general purpose, is that the wife is endowed with the capacity during the joint lives to hold in her possession as a single female one-half of the estate *in common* with her husband, and that the right of survivorship still exists at common law." The judgment creditor of the husband was allowed to appropriate the husband's interest, but whether the estate thus appropriated did or did not include the husband's right of survivorship does not appear and apparently was a question not presented for adjudication.

It would seem that the doctrine is thus established in New Jersey that a conveyance to a husband and wife gives the wife a legal estate for their joint lives as a tenant in common with her husband. It is a general principle of ancient application that a right to the use and enjoyment of the entire income and profits of real estate implies a legal estate sufficient to support such right. The ancient freehold estate which the husband took at the common law in his wife's lands had its origin in this principle. When the common law gave the husband the right to the sole use and possession of lands held by himself and wife as tenants of the entirety, a corresponding freehold estate necessarily went with this right, whether such estate can be deemed as existing as a distinct life estate, or must be regarded as part of the estate in fee which the husband held. When our statute prevents the husband from appropriating the entire rents and profits and vests in the wife an equal right with him to receive and enjoy those rents and profits, it follows that a freehold estate must be recognized as vesting in the wife corresponding with her right to enjoy the rents and profits, and a similar freehold estate must be recognized as vested in the husband corresponding with his right. This seems to be the plain result of the decision of the court of errors and appeals in the *Buttlar Case*.

The last question to be discussed is whether upon the case made out on this bill and affidavits annexed, and the affidavit of the defendants, a receiver should be appointed. The bill does not pray for partition, although it seems to set forth a case upon which the complainant would be entitled to partition of the life

estate held in common if he prayed for such relief. The bill, however, contains a general prayer for relief, and if the complainant should desire to obtain a decree for partition, and is entitled to use this suit for that purpose, a special prayer for such relief, if necessary, might be supplied by an appropriate amendment. As yet, however, the suit is not for partition. It is a suit by one tenant in common to have a receiver appointed because of his total exclusion from the possession and enjoyment of the land held in common, while his co-tenants who are insolvent are appropriating the entire rents and profits. Courts of equity are averse to appointing receivers of land held by tenants in common who cannot agree upon the management of their estate. *High Rec.* § *603.* In some cases, however, receivers have been appointed apparently where the sole object of the bill was to secure the appointment of a receiver and the collection and equitable division of the rents and profits through such receiver under the direction of the court. *High Rec.* §§ *603, 605.*

I shall not undertake to discuss this narrow head of equity jurisdiction, assuming that it exists in New Jersey. A court of equity certainly should be cautious in undertaking permanently through a receiver or otherwise to collect the rents of land held by tenants in common, and equitably divide the same among them merely because they disagree among themselves and thereby become incapable of attending to this business for themselves in a satisfactory manner. When no partition is prayed for, although it appears that the land held in common is capable of partition, or, being incapable of partition, is of such character and is so related to the parties that a sale thereof and division of the proceeds will accomplish justice, this court, it seems to me, should be extremely cautious in establishing what might be a permanent receivership for the administration of the land held in common. A court of equity will not carry on a partnership business through a receiver in a suit in which a dissolution is not sought merely because the partners disagree, or because the complainant partner is excluded.

I do not, however, have to pass upon this question because the application for a receiver does not stand alone upon the total exclusion of the complainant and the insolvency of the defend-

ants. The bill shows that the defendants have collected and appropriated to their own use the rents of the property ever since the complainant's title accrued, which was nearly ten months before the bill was filed, and are still collecting and appropriating those rents, and the bill prays for an accounting of rents so collected. The receivership applied for, therefore, is not the sole object of the suit, but is to some extent ancillary to the decree for an accounting and the ascertainment and payment of the complainant's share of the rents collected. A receiver will be appointed and the injunction restraining the defendants from collecting the rents will be continued. If the complainant desires to amend his bill so as to pray for partition, he may make such application upon the settlement of the order which will now be made, and thereupon any objection to allowing such amendment will be duly considered.