MARIE KING, PLAINTIFF-RESPONDENT, v. JOSEPH M. GREENE, MABEL GREENE, MARGARETTA P. W. HARRISON, JOHN CUSICK AND ELAINE CUSICK, DEFENDANTS-APPELLANTS.

Argued March 17, 1959—Reargued June 1, 1959—
Decided June 30, 1959.

Mr. *John Warren, Jr.* argued the cause for the defendants-appellants (*Messrs. Parsons, Labrecque, Canzona & Combs,* attorneys for defendants-appellants Greene and Cusick; *Mr. Burton T. Doremus,* attorney for defendant-appellant Harrison).

Mr. *Patrick J. McGann, Jr.* argued the cause for the plaintiff-respondent (*Messrs. Applegate, Reussille, Cornwell & Hartman,* attorneys).

Brief filed on behalf of New Jersey Title Insurance Association, *amicus curiae,* by *Messrs. Maurice A. Silver* and *Donald B. Jones* (*Mr. Donald B. Jones* also argued orally for the *amicus curiae*).

The opinion of the court was delivered by

BURLING, J. This is an action seeking possession of lands, damages for *mesne* profits and a declaration that a mortgage encumbrance held by defendant Margaretta P. W. Harrison is a nullity and directing its discharge of record. The Superior Court, Law Division, hearing the matter on stipulated facts, granted plaintiff's motion for summary judgment. Defendants appealed, and while pending and prior to argument in the Appellate Division, we certified the cause on our motion. After argument in this court, we

directed that the cause be reargued and requested that the New Jersey Title Insurance Association appear as *amicus curiae*.

The following facts are stipulated: In 1913 plaintiff, Marie King, acquired the title to three lots on Patterson Avenue in the Borough of Shrewsbury, New Jersey. In 1931 her husband, Philip King, brought an action against her in the Court of Chancery which resulted in a decree being entered that plaintiff owed him $1225. It was further ordered that plaintiff execute a conveyance of the three lots to herself and her husband as tenants by the entirety. While the conveyance was never made, the decree was recorded, the self-operative effect of which was to make Marie and Philip King become seized of the premises as tenants by the entirety. *R. S.* 2:29–61 (now *N. J. S.* 2A:16–7).

In 1932 execution was issued to satisfy the 1931 money judgment and a sheriff's deed was made to John V. Crowell of all plaintiff's right, title and interest in the property. In 1933 Philip King conveyed his right, title and interest in the three lots to Martin Van Buren Smock. John V. Crowell and his wife joined in the deed to Smock, conveying their interest acquired by virtue of the sheriff's deed. Philip King died in 1938. In 1946 Smock conveyed his interest to defendants Joseph and Mabel Greene.

In 1957 plaintiff, as surviving spouse of Philip King, instituted the present action for possession, contending that she is the sole owner of the property and that the 1932 sheriff's deed conveyed only one-half the rents, issues and profits of the property during the joint lives of the spouses and did not convey her right of survivorship. She alleges that when her husband died in 1938 the life estate for the joint lives of the spouses terminated and she became entitled to the fee. Defendants' contention is that the sheriff's deed conveyed plaintiff's right of survivorship as well as a life interest.

The trial court concluded that the sheriff's deed did not include the right of survivorship and entered a summary

judgment for plaintiff which declared that she is the present holder of a fee simple in the premises; that a mortgage upon the premises held by defendant Margaretta Harrison and given by the defendants Joseph and Mabel Greene is discharged; that defendants John and Elaine Cusick, the Greenes' tenants, must vacate the premises and that plaintiff is entitled to *mesne* profits for six years prior to the commencement of this action.

The question at issue is whether the purchaser at an execution sale under a judgment entered against the wife in a tenancy by the entirety acquires the wife's right of survivorship.

It is conceded by all parties to this appeal, as indeed they must, that the two most recent *holdings* on the question at issue, *Zanzonico v. Zanzonico,* 24 *N. J. Misc.* 153, 166 *A. L. R.* 964 (*Sup. Ct.* 1946); *Dworan v. Miloszewski,* 17 *N. J. Super.* 269 (*Cty. Ct.* 1952), are to the effect that a purchaser at execution sale of the wife's interest in an estate by the entirety does not acquire the wife's right of survivorship, so that upon the death of the husband the purchaser's rights are extinguished. Since neither of the two cases was determined in a court of last resort and since the law on the question has been in considerable confusion we shall undertake a re-examination of the question.

Involved are two fundamental problems: (A) the nature of an estate by the entirety at common law, and (B) the effect upon the estate by the entirety of the Married Women's Act (*L.* 1852, *p.* 407, now *R. S.* 37:2–12 *et seq.*).

### A—ESTATES BY THE ENTIRETY AT COMMON LAW.

At the outset we note that the industry of counsel and our own independent research have failed to reveal any English case decided prior to 1776, touching upon the question of whether a voluntary or involuntary conveyance of a husband's interest in a tenancy by the entirety carries with it his right of survivorship.

The unique form of concurrent ownership at common law, labeled estates by the entirety, may be traced into antiquity at least as far back as the 14th and 15th Centuries. 3 *Holdsworth, History of the English Law* (3d ed. 1923), 128; *Kepner, "The Effect of an Attempted Creation of an Estate by the Entirety in Unmarried Grantees,"* 6 Rutgers L. Rev. 550 (1952). The estate was unique because of the common-law concept of unity of husband and wife and the positing of that unity in the person of the husband during coverture. *Putnam, "The Theory of Estates by the Entirety,"* 4 *Southern L. Rev.* 91 (1879). A husband and wife cannot hold by moieties or in severalty, said Littleton, "and the cause is, for that the husband and wife are but one person in law. * * *" *Coke on Littleton, sec.* 291. Blackstone, in his judicial capacity, noted:

"This estate [entirety] differs from joint-tenancy, because joint-tenants take by moieties, and are each seised of an undivided moiety of the whole, *per my et per tout*, which draws after it the incident of survivorship or *jus accrescendi*, unless either party chooses in his life-time to sever the jointure. But husband and wife, being considered in law as one person, they cannot, during the coverture take separate estates; and therefore upon a purchase made by them both, they cannot be seised by moieties, but both and each has the entirety. They are seised of their respective moieties, but both and each has the entirety. They are seised *per tout*, and not *per my*." *Green v. King*, 2 *Wm. Blackstone* 1211, 1214, 96 *Eng. Rep.* 713, 714 (*C. P.* 1777).

To the same effect see the opinion of Chancellor Kent in *Rogers v. Benson,* 5 *Johns. Ch.* 431 (*N. Y.* 1821).

The unity of the spouses theory was early recognized in New Jersey as the foundation upon which estates by the entirety rested. *Den ex dem. Hardenbergh v. Hardenbergh,* 10 *N. J. L.* 42 (*Sup. Ct.* 1828).

By virtue of the *jus mariti* and *jure uxoris* the husband was the dominant figure in the marital unity. Thus, in an estate by the entirety the husband had absolute dominion and control over the property during the joint lives. The husband was entitled to the rents, issues and

profits during the joint lives of himself and his wife, with the right to use and alienate the property as he desired, and the property was subject to execution for his debts. *Washburn v. Burns,* 34 *N. J. L.* 18 (*Sup. Ct.* 1869) (it should be noted that although *Washburn* was decided after the Married Women's Act, the court overlooked the effect of the act and decided the case on common-law principles); *Freeman, Co-Tenancy and Partition* (*2d ed.* 1888), 140; 2 *American Law of Property,* § 6.6 *p.* 28 (1952); *Phipps, "Tenancy by Entireties,"* 25 *Temple L. Q.* 24, 25 (1951). As stated by the court in *Washburn v. Burns, supra:*

"* * * the husband has an interest which does not flow from the unity of the estate, and in which the wife has no concern. He is entitled to the use and possession of the property during the joint lives of himself and wife. During this period the wife has no interest in or control over the property. It is no invasion of her rights, therefore, for him to dispose of it at his pleasure. The limit of this right of the husband is, that he cannot do any act to the prejudice of the ulterior rights of the wife." (34 *N. J. L.,* at *page* 20)

The remaining question is, could the husband unilaterally alienate his right of survivorship at common law? Our study of the authorities convinces us that he could. The entire thrust of the authorities on the common law, with one notable exception, is to the effect that the only distinction between a joint tenancy and a tenancy by the entirety at common law was that survivorship could not be affected by unilateral action in the latter estate.

It was settled in England as early as the 14th Century that the husband could not defeat the wife's right of survivorship. In that case, reported in 2 *Coke on Littleton, sec.* 291, William Ocle was found guilty of treason (he murdered Edward II) and his estate was forfeited. Edward III granted the forfeited lands (owned jointly with the wife) to someone else. It was held that the husband's act of treason could not deprive the wife of her right of survivorship. *Back v. Andrew,* 2 *Vern.* 120 (1690), stands for the

same proposition. But to say that the husband cannot by his voluntary or involuntary act defeat the wife's right of survivorship is not to say that his own right of survivorship, subject to wife's right of survivorship, should he predecease her, cannot be alienated. The notion that the husband could not alienate his interests stems from Blackstone's comment, writing in 1765 to the following effect:

"And therefore, if an estate in fee be given to a man and his wife, they are neither properly joint tenants, nor tenants in common, for husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety, *per tout et non per my;* the consequence of which is that *neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain in the survivor.*" 2 *Blackstone's Commentaries (Tucker, ed.* (1802), 181) (Emphasis supplied)

Kent, in his *Commentaries* first published in 1825, merely said: "Neither of them can alien so as to bind the other." 4 *Kent's Commentaries* 362.

Preston, a much quoted authority in early America, writing in England in 1820 declared categorically:

"An alienation by the husband alone, in the lifetime of the wife, will, in the event of his surviving his wife, be good for the share of himself and his wife." (1 *Preston on Estates* 134 (1820))

Blackstone's enigmatic statement that "neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain in the survivor" was early limited in New Jersey. In *Den ex dem. Wyckoff v. Gardner,* 20 *N. J. L.* 556 *(Sup. Ct.* 1846), decided prior to the Married Women's Act, and hence under common-law principles, the issue was whether the husband could mortgage the premises in an estate by the entirety without the consent of his wife. In that case, Carpenter, J., held:

"It is said, in the cases cited, and in the usual authorities which treat of this peculiar estate that neither husband nor wife, separately and without the assent of the other, can dispose of or convey away

any part. That the husband cannot alien, and much less devise that estate, the whole of which belong to his wife as well as to himself. The conveyance of the husband is doubtless void as against the wife, she surviving her husband, and as against those claiming under her; but can it be said to be void as against the husband himself? Has the husband no power at all over the land during coverture, not even to make a lease? If it· be so, notwithstanding marital rights, the wife would seem to have an absolute veto, and her consent would be necessary, not only to convey the estate, but even to dispose of the possession, during the husband's life and during coverture. As urged in the argument, in such case, the wife would have a more controlling influence over an estate like this, than when the fee is in herself, which cannot be. The general language of the authorities is to be restrained to the case itself under consideration, and the obvious meaning of the passages relied on, is more guardedly expressed by Sir William Grant, in a case recited. 'The husband, *as against her*, cannot pass any right, title or interest; but if she survive, the whole must accrue to her.' *Glaister v. Hewer*, 8 *Ves. Jr.* 199. 'The husband alone,' says Chancellor Kent, 'may grant or charge the wife's land, during their joint lives, and if he be tenant by the curtesy during his own life; but he cannot alien or incumber it, if it be a freehold estate, so as to prevent the wife, or her heirs, after his death, from enjoying it discharged from his debts or engagements.' 2 *Kent's Com.* 133, *5th Ed.* This doctrine is as equally applicable to the estate now under consideration, as to the case when the fee is in herself. The husband has the right of possession and control during coverture. Though he cannot convey the estate at all events, cannot convey so as to prejudice her rights in case she survive; yet he may demise, alien or mortgage his interest during his own life. *Barber v. Harris*, 15 *Wend.* [*N. Y.*] 615; *Jackson* [*ex dem. Suffern*] *v. McConnell*, 19 *Wend.* [*N. Y.*] 175.

But does it lie in the mouth of the defendant in possession of the premises, in an action of ejectment brought against him upon his own mortgage deed, to deny his right to mortgage? Whatever may be the effect of ordinary deeds of conveyance without warranty in concluding a grantor, who has released or conveyed without interest, yet in relation to mortgages the question is well settled. By an equitable estoppel, based upon the legal fraud which would be otherwise permitted, one who mortgages land as his own, upon suit thereupon brought against him, shall not be permitted to derogate from his own mortgage, by denying his title, or by setting up title in any third person." (20 *N. J. L.*, at *pages* 559–561)

Nevius, J., held:

"* * * The counsel for the defendant seemed to think, from the general expression found in the books, 'that where an estate is conveyed to husband and wife, neither can convey or dispose of the

same or any part of it without the concurrence of the other,' and that the husband is precluded from leasing the land or charging it by mortgage. The true meaning of such expression is, that neither can make such a disposition of the estate, without the concurrence of the other, as will affect the right and interest of the other. The mortgage by the husband does not affect the wife's right or interest in the lands; if she survive, the whole title and estate will vest in her freed from the mortgage. I am of the opinion that judgment should be entered for the plaintiff." (20 *N. J. L.* at *page* 563)

Thus, the view that neither spouse could alienate his interest in the estate without the consent of the other, was interpreted to mean that the husband could not alienate so as to prejudice the wife's rights in the estate, and it is clear that the wife's only right at common law was her right of survivorship. No prejudice would result to the wife's interests at common law by the husband's alienation of his right of survivorship. If he predeceased her, she would take a fee. If she predeceased him, her interests were cut off anyway. During his lifetime she had no interest in the estate.

That the husband could alienate his right of survivorship at common law is buttressed by the fact that at common law, in instances where property was held in the wife's name alone, the husband had the right to possession and had the absolute control over the rents, issues and profits during coverture. He could freely alienate that interest and it was subject to execution by his creditors. I *American Law of Property, supra,* § 5.51. It would be incongruous to suggest that the husband could convey at the common law no greater interest in property held jointly by his wife and himself than in property held solely by his wife.

Most courts and commentators have taken the position that at common law the husband's right of survivorship was alienable, so that the purchaser or grantee would take the entire fee in the event the wife predeceased the husband and the interest was subject to execution for his debts. See *e. g., Howell v. Folsom,* 38 *Or.* 184, 63 *P.* 116 (*Sup. Ct.* 1900); *Licker v. Gluskin,* 265 *Mass.* 403, 164 *N. E.* 613,

63 *A. L. R.* 231 (*Sup. Jud. Ct.* 1929); *Hiles v. Fisher,* 144 *N. Y.* 306, 39 *N. E.* 337, 30 *L. R. A.* 305 (*Ct. App.* 1895); *Branch v. Polk,* 61 *Ark.* 388, 33 *S. W.* 424, 30 *L. R. A.* 324 (*Sup. Ct.* 1895); *Ames v. Norman,* 4 *Sneed* 683, 36 *Tenn.* 683, 70 *Am. Dec.* 269 (*Sup. Ct.* 1857); *In re Brown,* 60 *F. 2d* 269 (*D. C. Ky.* 1932); *Preston on Estates, supra, p.* 134; 1 *Washburn, Real Property* (*5th ed.* 1887), 707; 2 *Jones, Real Property in Conveyancing,* 632 (1896); 2 *American Law of Property, supra,* § 6.6, *p.* 28; 4 *Thompson, Real Property* (*rev. ed.* 1940), § 1816, *p.* 352; 2 *Tiffany, Real Property,* § 435, *p.* 232 (1939); 166 *A. L. R.* 969, 971–974 (1946); *Phipps, "Tenancy by Entireties," supra,* at *page* 26; *Bordwell, "Real Property,"* 8 *Rutgers L. Rev.* 141 (1953); 26 *Am. Jur., Husband and Wife,* § 84; *Ritchie, "Tenancy by the Entirety in Real Property,"* 28 *Virginia L. Rev.* 608, 609 (1941).

In New Jersey the seeds of doubt on the proposition at hand were first sown in *Bilder v. Robinson,* 73 *N. J. Eq.* 169 (*Ch.* 1907). In that case a judgment had been recovered against one Robinson who owned property by the entirety with his wife, Ottie. Levy was made upon the husband's interest and the plaintiff was the purchaser at the execution sale. The bill charged that plaintiff was entitled to receive one-half of the rents from the premises from the date of the sheriff's deed, but that the defendants, who were insolvent, totally excluded plaintiff from possession and refused to account to him for his share of the rents. The bill prayed that a receiver be appointed and an accounting had. Vice-Chancellor Stevenson, in discussing the husband's interest in an estate by the entirety, stated:

"* * * Whether the husband could convey an estate in fee which his grantee would hold subject to the wife's right of survivorship is a matter about which there seems to be some difference of opinion, and also great vagueness of statement among the authorities. Inasmuch as the husband, in theory of law held the entire estate in fee, and, unlike the wife, was under no general incapacity to make conveyances of land, it would seem to follow that the husband could, by his deed, convey the estate which he held, viz., an estate in fee

subject only to be defeated in case his wife should survive him. There are authorities which distinctly declare the power of the husband to make such a conveyance. 1 *Washburn on R.* (*6th ed.*) 913; *Freeman Co-ten. & Par.* (*2d ed.*) 75; *Ames v. Norman* 4 *Sneed* (*36 Tenn.*) 683 (1875); *Berrigan v. Fleming,* 2 *Lea* (70 *Tenn.*) 271 (1879)." (*73 N. J. Eq.* at *page* 172).

What, then, would create a disability in the husband to convey his right of survivorship? The answer is found in the following passage from the vice-chancellor's opinion:

"The sheriff's deed to the complainant in this case passed the same title which a deed of bargain and sale executed by the judgment debtor, Mr. Robinson, would have passed. 3 *Gen. Stat. p.* 2980 § 7; *P. L.* 1799 *p.* 486 § 12; 1 *Nevill* 280; *Hackensack Savings Bank v. Morse,* 46 *N. J. Eq.* (1 *Dick.*) 161; *Brady v. Carteret Realty Co.,* 67 *N. J. Eq.* (1 *Robb.*) 641. It may be noted, however, that our statute authorizing the transfer of estates in expectancy is made inapplicable by an express proviso to sales of real estate under executions. *P. L.* 1851 *p.* 282; 1 *Gen. Stat. p.* 881 § 138." (73 *N. J. Eq.,* at *page* 173)

Since the husband and wife were alive at the time the suit was brought, and since the relief prayed for only requested one-half the rents, issues and profits, the vice-chancellor found it unnecessary to decide the question of whether the right of survivorship of a spouse could be alienated, voluntarily or involuntarily.

The *caveat* in the *Bilder* case, *i. e.,* that *L.* 1851, *p.* 282 (now *R. S.* 46:3–7) prohibits execution upon contingent estates is not well taken. Indeed, Vice-Chancellor Stevenson himself seems to have recognized this when he said, in the previously quoted passage, that the husband in an estate by the entirety held "an estate in fee subject only to be defeated in case his wife should survive him." That a tenant by the entirety has a vested estate, subject to defeasance upon his predeceasing the other spouse, is amply supported by the authorities. It was first enunciated in New Jersey in 1828 in the case of *Den ex dem. Hardenbergh v. Hardenbergh, supra.* Chief Justice Ewin there declared:

"* * * Between husband and wife the *jus accrescendi* does not exist. The surviving joint tenant takes something by way of accretion or addition to his interest, gains something he previously had not, the undivided moiety which belonged to the deceased. The survivor of husband and wife, has no increase of estate or interest by the decease, having before the entirety, being previously seized of the whole. The survivor, it is true, enjoys the whole, but not because any new or farther estate or interest becomes vested, but because of the original conveyance, and of the same estate and same quantity of estate as at the time the conveyance was perfected." (10 *N. J. L.*, at *page* 46)

To the same effect, see *In re Staiger's Estate,* 104 *N. J. Eq.* 149, 152 (*E. & A.* 1929); *Bordwell, supra,* 8 *Rutgers L. Rev.,* at *p.* 142. For a collection of cases in other jurisdictions holding that upon the death of a spouse in an estate by the entirety the interest belongs to the other, not by virtue of survivorship, but by virtue of the title that vested under the original limitation, see 4 *Thompson on Real Property* (*rev. ed.* 1940), § 1803, *pp.* 331, 332.

▇ The estate, being presently vested, would be subject to execution, *N. J. S.* 2A:17-1.

*Servis v. Dorn,* 76 *N. J. Eq.* 241 (*Ch.* 1909), decided subsequent to *Bilder,* fails to shed any light upon the question of whether the right of survivorship of a tenant by the entirety was alienable in New Jersey.

In *Schulz v. Ziegler,* 80 *N. J. Eq.* 199 (*E. & A.* 1912), a father who held property as a tenant by the entirety conveyed his interest to his daughter. The daughter sought partition against her mother. A motion to strike the bill was denied. In that case Vice-Chancellor Walker held that the daughter by virtue of the conveyance became a tenant in common with the mother for the joint lives of the mother and father. He further held that if the premises were not susceptible of division, it should be ordered to be sold. The vice-chancellor, by way of *dictum,* proffered that the father's right of survivorship could not be transferred to the daughter and that upon the death of either father or mother, the daughter's estate would terminate. But on appeal the Court of Errors and Appeals did not adopt the full views of Vice-

Chancellor Walker (who by the time of appeal had become Chancellor). Rather, the opinion by Justice Parker, which affirmed the order appealed from, was premised with the careful observation: "We concur in the result reached by the court below, and, for the most part, upon the grounds expressed in the foregoing memorandum of Vice-Chancellor (now Chancellor) Walker." (80 *N. J. Eq.*, at *page* 201) A careful reading of Justice Parker's opinion shows that he studiously avoided adopting the *dictum* below that the right of survivorship was not transferable and that the purchaser's estate would terminate upon the death of either of the tenants by the entirety. Justice Parker's opinion was summed up in the following language:

"We hold, therefore, that by virtue of an estate by entireties [as modified by the Married Woman's act] the seisin of husband and wife during the joint lives is essentially a tenancy in common, terminated on the death of either, with remainder in fee to the survivor; and that *the right of the husband may be transferred by him to a third party who thereby becomes tenant in common for the joint lives in the husband's place; and that partition may be had between such purchaser and the wife of this tenancy in common, but without affecting in any way the common-law right of survivorship.*" (Emphasis supplied) (80 *N. J. Eq.*, at *pages* 201–202)

It is clear that the Court of Errors and Appeals had some doubts concerning the statement below of Vice-Chancellor Walker as to the alienability of the right of survivorship in a tenancy by the entirety at common law. At best the opinion is non-committal and fails to shed any light on the problem here involved. *Wortendyke v. Rayot,* 88 *N. J. Eq.* 331 (*E. & A.* 1917), also decided subsequent to *Bilder,* did not involve the present problems and contains no comment, by way of *dictum* or otherwise, upon it.

The next case of consequence is *Taub v. Shampanier,* 95 *N. J. L.* 349 (*Sup. Ct.* 1920). There Justice Minturn said of estates by the entirety:

"So it is declared, evincing the power of sale vested in the husband: 'If the husband conveys the estate, and survived his wife his conveyance will thereupon become absolute.' 21 *Cyc. p.* 1199, and cases.

This conception of the legal status, fortified by the adjudications in this state and elsewhere, supports the power of the husband to sell subject to the contingency of the wife's predecease, thereby effectuating a fee-simple estate in the vendee. *Den ex dem. Wyckoff v. Gardner*, 20 *N. J. L.* [556] 557; *Washburn v. Burns*, 34 *N. J. L.* 18; *Buttlar v. Rosenblath*, 42 *N. J. Eq.* 651; *Barber v. Harris*, 15 *Wend.*, *N. Y.*, 615; *Jackson ex dem. Suffern v. McConnell*, 19 *Wend.*, *N. Y.*, 175." (95 *N. J. L.*, at *page* 351)

Five years later, in *J. & A. Steinberg Co. v. Pastive*, 97 *N. J. Eq.* 52 (*Ch.* 1925), Vice-Chancellor Lewis, albeit in *dictum*, declared:

"* * * The husband and wife were tenants by the entirety. Upon the death of either the entire fee would vest in the survivor. During the lifetime of both, however, the creditors of either could seize the respective interests and sell the same under execution, but *the purchaser of such interests of either of the owners would take simply the prospect or chance of such owner surviving his co-owner;* for, as I have already stated, if the person whose interest was thus seized or sold should predecease his co-owner, his interest would fail, and the entire fee would vest in the survivor, to the exclusion of the other's creditors." (Emphasis supplied) (97 *N. J. Eq.*, at *page* 54)

But compare the opinion of Chancellor Walker in *Zubler v. Porter*, 98 *N. J. L.* 444, at *page* 447 (*E. & A.* 1923) where it is implied *dictum* that a conveyance by the husband in an estate by the entirety does not carry with it his right of survivorship.

*Gery v. Gery*, 113 *N. J. Eq.* 59 (*E. & A.* 1933), is simply a recital of some of the previous cases and adds nothing to the disposition of the question involved in the present inquiry, which was not there considered.

Indicative of the opinion of at least a segment of the bar prior to the *Zanzonico* and *Dworan* cases was the statement contained in the much utilized treatise, *Lieberman, New Jersey Abstracts and Titles*, published in 1931, where the author states at § 75, *p.* 72:

"The husband's deed or mortgage conveys or mortgages only his interest in the estate for his life with the fee if he survives his wife. * * *

At common law and to-day an estate by entirety is, during coverture, subject to sale on execution against the husband, but such sale cannot affect the interest of the wife."

This statement was left unaltered in the 1940 supplement to that textbook.

Such was the state of the law in New Jersey up to the time of the *Zanzonico* case and *Dworan* case which relied upon *Zanzonico*. Putting aside those cases for the moment, we inquire: Did they definitely settle the question at issue so as to cause reliance upon them by the bar of this State in passing upon titles? The answer is clearly in the negative. In *Fruzynski v. Radler*, 23 *N. J. Super.* 274 (*App. Div.* 1952) certification denied 11 *N. J.* 499 (1953), a husband and wife conveyed property held by them by the entirety to their daughter. Suit was brought by the father to set aside the deed on the grounds that it was fraudulently procured from the father. The wife had died in the interim. In holding that the deed was procured by fraud from the father and therefore that the conveyance was void as to him, the issue presented was what estate if any had been conveyed to the daughter. Judge, now Mr. Justice, Francis, concluded:

"* * * she received only the wife's interest, which was a life estate in common with her husband subject to the right of survivorship. Thus, if Fruzynski had predeceased his wife appellant would have taken the fee. But when the wife died first, the right of survivorship wiped out the life estate and brought the full fee back to Fruzynski. Consequently the judgment establishes full and complete ownership in him." (23 *N. J. Super.*, at *page* 282)

In the most recent decision on the point in question, *Dorf v. Tuscarora Pipe Line Co., Ltd.*, 48 *N. J. Super.* 26 (*App. Div.* 1957), Judge Goldmann interjected the following *quaere:*

"* * * A purchaser of one tenant's interest on execution sale becomes a tenant in common with the other spouse. See *Zubler v. Porter*, 98 *N. J. L.* 444 (*E. & A.* 1923). If the non-debtor spouse survives, the survivor takes free from the claims of the de-

ceased spouse's creditors, *Zanzonico v. Zanzonico*, above. *Quaere*, if the debtor spouse survives, does the purchaser of his interest on execution sale get complete ownership?" (48 *N. J. Super.*, at *page* 33)

■ It is our view that the husband could, at common law, alienate his right of survivorship, or, more properly, his fee simple subject to defeasance. The effect of the decisions in this jurisdiction prior to *Zanzonico* and *Dworan* are not to the contrary, nor may we add, are the decisions following those cases.

### B—EFFECT OF THE MARRIED WOMEN'S ACT OF 1852 (*L*. 1852, *p*. 407, now *R. S.* 37:2–12 *et seq.*) UPON ESTATES BY THE ENTIRETY.

*R. S.* 37:2–12 provides:

"The real and personal property of a woman which she owns at the time of her marriage, and the real and personal property, and the rents, issues and profits thereof, of a married woman, which she receives or obtains in any manner whatever after her marriage, shall be her separate property as if she were a *feme sole*."

At least nine jurisdictions took the view that the Married Women's Act, having destroyed the spousal unity, destroyed the foundation upon which estates by the entirety rested, and therefore such concurrent ownership could no longer arise. *Phipps, supra,* 25 *Temple L. Q.,* at *pp*. 28–29. This was the view originally taken in New Jersey, *Kip v. Kip,* 33 *N. J. Eq.* 213 (*Ch.* 1880), and was the view taken by the lower court in *Rosenblath v. Buttlar,* 7 *N. J. L. J.* 143 (*Ch.* 1884). It might be noted that presently tenancy by the entirety does not exist in 29 states. *Phipps, supra,* 25 *Temple L. Q.,* at *p*. 32. In the absence of legislation abolishing or altering estates by the entirety, our role, in light of the settled precedent that they do exist in New Jersey, is merely to define their incidents.

The Court of Errors and Appeals in *Buttlar v. Rosenblath,* 42 *N. J. Eq.* 651 (*E. & A.* 1887), settled the question of

the effect of the Married Women's Act upon estates by the entirety. After holding that the act does not destroy the estate, it was held that the effect and purpose of the act was to put the wife on a par with the husband. It was held:

"There is nothing in the married woman's act which indicates an intention to exclude this estate wholly from its operation. I think, therefore, that the just construction of this legislation, and the one in harmony with its spirit and general purpose, is that the wife is endowed with the capacity, during the joint lives, to hold in her possession, as a single female, one-half of the estate in common with her husband, and that the right of survivorship still exists as at common law." (42 *N. J. Eq.*, at *page* 657)

Subsequent decisions have confirmed that presently husband and wife, by virtue of the Married Women's Act, hold as tenants in common for their joint lives; that survivorship exists as at common law and is indestructible by unilateral action; and that the rights of each spouse in the estate are alienable, voluntarily or involuntarily, the purchaser becoming a tenant in common with the remaining spouse for the joint lives of the husband and wife. See *e. g., Schulz v. Ziegler, supra; Wortendyke v. Rayot, supra; Zubler v. Porter, supra.*

It is clear that the Married Women's Act created an equality between the spouses in New Jersey, insofar as tenancies by the entirety are concerned. If, as we have previously concluded, the husband could alienate his right of survivorship at common law, the wife, by virtue of the act, can alienate her right of survivorship. And it follows, that if the wife takes equal rights with the husband in the estate, she must take equal disabilities. Such are the dictates of complete equality. Thus, the judgment creditors of either spouse may levy and execute upon their separate rights of survivorship.

These conclusions necessitate the overruling of *Zanzonico* and *Dworan* cases, *supra*.

Nor can we perceive any sound policy reason for adhering to the *Zanzonico* ruling. The unities of the estate are not

thereby preserved, since a creditor can become a tenant in common with the non-debtor-spouse during the joint lives of husband and wife. It might be argued that the involuntary sale of a right of survivorship will not bring a fair price. However, the creditor even under *Zanzonico* can receive a one-half interest in the life estate for the joint lives. It seems to us that if this interest were coupled with the debtor-spouse's right of survivorship the whole would command a substantially higher price and the creditor may thereby realize some present satisfaction out of the debtor-spouse's assets.

Moreover, to hold that a sheriff's deed does not pass the debtor-spouse's right of survivorship compels the creditor to maintain a constant vigilance over the estate. This is particularly true where the purchaser at execution sale of the debtor-spouse's life interest is someone other than the judgment creditor. There is, in short, no compelling policy reason why a judgment creditor should be inordinately delayed, or, in some instances completely deprived of his right to satisfaction out of the debtor-spouse's assets.

The judgment appealed from is reversed and the cause is remanded for the entry of a judgment in accordance with the views expressed in this opinion.

WEINTRAUB, C. J. (dissenting). The estate by the entirety is a remnant of other times. It rests upon the fiction of a oneness of husband and wife. Neither owns a separate, distinct interest in the fee; rather each and both as an entity own the entire interest. Neither takes anything by survivorship; there is nothing to pass because the survivor always had the entirety. To me the conception is quite incomprehensible. The inherent incongruity permeates the problem before us.

Presumably the estate by the entirety was designed to serve a social purpose favorable to the parties to the marriage. We are asked to recognize incidents more compatible with present thinking. Specifically, we are asked to subject a

spouse's interest in the *fee* to execution sale. I am not sure that I can identify just what is being sold. In theory there is no right of survivorship; nothing accrues on death. And during coverture neither spouse has a separate interest in the fee. Whatever the nature of the "fee" interest a purchaser receives, he can do nothing with it except wait and hope. What he buys is the chance that the non-debtor spouse will expire before the judgment debtor.

I do not seriously urge such academic difficulties; indeed, one cannot confidently make deductions from a premise that is fictional. My objection is a practical one, to wit, that so long as we adhere to the concept of an estate by the entirety, an execution sale will result in the sacrifice of economic interests. Since the purchaser at the sale does not acquire a one-half interest in the fee with a right to partition the fee, the execution sale can be but a gambling event, yielding virtually nothing to the debtor, or for that matter to the creditor either unless he is the successful wagerer at the sale and in the waiting game to follow.

I concede that earlier decisions recognizing a right to sell the *life interest* of the debtor presented the same problem in theory, but the practical consequences were negligible. I think it has been the general experience of the bar that judgments obtained against a spouse have not been followed by execution sales of the life interest. And in bankruptcy proceedings the interest of the debtor regularly has been sold for a nominal sum to the other spouse or a representative of both. The general assumption, I believe, has been that the fee was not involved; and the life interest for one reason or another was not regarded by outsiders as sufficiently attractive. But if the purchaser at an execution or bankruptcy sale may one day reap the harvest of a full title, there will be an invitation to speculators.

If public policy demands that a creditor's interest be respected (I have no quarrel with the thought), the basis should be just to both the creditor and the debtor. It cannot be unless what is offered for sale is a non-contingent, non-

speculative one-half interest ·which would support a partition suit. In that setting, bidders would know what is being sold and the sale could yield a fair price. An equitable solution can be achieved only by a statute abolishing the estate by the entirety in favor of a joint tenancy, or at least entitling the purchaser at an involuntary sale to have partition. In my judgment, a half-way approach will prove unjust. It will appreciably turn against the husband and wife a fictional concept that doubtless was originated for their benefit.

It should be noted that *R. S.* 46:3–7 forbids execution sales of the contingent interests there described. The majority hold the interest of a spouse in the fee is "vested." I find it difficult, again in abstract thought, to determine what part of the fee can be said to be "vested" in one spouse at the time of the sale. But realistically it would seem accurate to recognize that the so-called "right of survivorship" is ˙quite contingent, and whether it is within the statute or not, still it would serve the same policy to keep it from the auction block.

The impact upon the free movement of property in the marketplace may also be noted. In effect, the purchaser at the involuntary sale becomes a member of the entity for title purposes. In the hands of a husband and wife, property will be sold when the common economic interests of the family will be furthered. But when the power to alienate the whole is divided between a spouse and a stranger with unrelated economic motivations, property will not be moved unless those diverse interests can come to terms. Neither can compel a sale. In practical effect, there is a new restraint upon alienability to the disservice of the public interest.

I accordingly vote to affirm.

HALL, J. (dissenting). We are called upon here to determine a question of importance relating to certain incidents of tenancies by the entirety, which oddly enough has never

been directly decided by the court of last resort in this State. The decision, no matter which way it goes, will be of retrospective effect and so will be bound to affect titles, since there have been divergent views on the question to some extent among New Jersey lawyers. The obligation of the court in such a situation is, of course, to determine what our law is on the subject, as an original proposition, and if at all possible, to arrive at that conclusion primarily on the basis of past expressions of our highest court bearing closest on the question, which therefor may well be said to have been relied upon by the bar in passing upon titles or advising as to rights under a judgment against one spouse. This approach will wreak the least havoc. *Cf. Kimble v. City of Newark,* 91 *N. J. L.* 249, 253 (*E. & A.* 1917); *Fox v. Snow,* 6 *N. J.* 12, 14, 21–25 (1950). I therefore do not conceive it to be a proper exercise of our function, and indeed it may be a grave disservice, to determine the question on the basis of what we think our law might well be or ought to be in the light of modern social and economic considerations or what the law may be elsewhere.

The majority opinion really comes down to this:

At common law the husband could voluntarily alienate the possibility of a fee simple interest (so-called "right of survivorship") subject to defeasance if the wife survived him, and so it was subject to execution for his debts and involuntary alienation by sheriff's sale to the same extent. The Married Women's Act in New Jersey affected only the husband's common law right (the estate by the marital right or *jure uxoris*) to her share of the rents, issues and profits during their joint lives, so that she became entitled to hold and receive the possession and usufructs of one-half of the estate, in common with her husband, as if a single female, and this result placed her on a complete par with him. Therefore her defeasible survivorship interest became likewise voluntarily alienable by her act and so subject to involuntary alienation at the hands of her creditors.

On the basis of the considerations mentioned I submit that the majority's syllogistic approach and reasoning arrives at and rests upon an incorrect major premise, *i. e.*, the voluntary alienability of the husband's chance of survivorship at common law. This is not only in disregard of expressions of the Court of Errors and Appeals specifically referring to the question and two recent trial court decisions squarely in point, but is at odds with the long-standing basic theory of this "peculiar" estate. The final result reached is, I am firmly convinced, fundamentally wrong from the standpoint of principle and local precedent and is likely to have maximum adverse effect on an incalculable number of titles.

The essential primary inquiry should be, I suggest, to discover what our courts have decided was the effect of our Married Women's Act of 1852 on this tenancy and its incidents. This is so because such would necessarily supersede the common law, and in other states the effect of such statutes has been determined with great contrariety of opinion, running all the way from abolition of the estate and conversion into a complete tenancy in common to holding that the statute is inapplicable to entireties and so has no effect. 2 *American Law of Property,* § 6.6, *pp.* 28–30 (1952); 2 *Walsh, Commentaries on the Law of Real Property, pp.* 32–39 (1947). There is no real difficulty in determining New Jersey's holding on this point and I do not disagree fundamentally with the majority in this respect. The effect was early settled in the leading case of *Buttlar v. Rosenblath,* 42 *N. J. Eq.* 651 (*E. & A.* 1887), and has been re-iterated without deviation since. See *Gery v. Gery,* 113 *N. J. Eq.* 59 (*E. & A.* 1933), in which Justice Case cogently reviews and analyzes the leading cases beginning with *Buttlar.* For our purposes, the New Jersey rule is that the statute had no effect on the incident of survivorship, which, as *Buttlar* put it, "still exists as at common law." (42 *N. J. Eq.,* at *page* 657). What the act did without question, and all it did, as was well put in *Gery* (113 *N. J. Eq.,* at *pages* 64, 65), was to destroy the husband's estate by the

marital right and make the spouses "tenants in common as to the right of possession and the use of the property and as to the right of either spouse to convey his or her estate for the term of the joint lives to a third party," with the stranger becoming a tenant in common with the retaining spouse for the same term. Incidentally, I believe Justice Case in *Gery* put into final discard the concept suggested in a few cases since 1852, probably more by way of graphic language than of technical holding, that the right of survivorship had become, by virtue of the statute, a contingent remainder in fee to the survivor. See *e. g.*, *Schulz v. Ziegler*, 80 *N. J. Eq.* 199, 201 (*E. & A.* 1912), and *Zubler v. Porter*, 98 *N. J. L.* 444, 446, 447 (*E. & A.* 1922).

The new rule of tenancy in common during the joint lives of course meant that, since each spouse was separately entitled to one-half of the possession and profits and each could now alienate such interest for the term of the joint lives, the same interest could be reached by a creditor of the particular spouse to the same extent. There was no longer any distinction between the spouses. Each could do what the other could.

The retention of survivorship "as at common law" leads one to consider what that common law was in the respect in question as it existed in New Jersey before 1852, and it is here where I respectfully say the majority has fallen into underlying error. In considering this phase of the question before us it may well be suggested that the common-law theory and consequent incidents have little reason and less logic to support them, but to me such can be of little or no concern. The technical aspects of the common law of real property are what they are from ancient days, and generally they can and should only be changed by prospective legislation if different conditions and policies of modern times indicate the desirability of modification. Until then, a court should be bound by them and the chips must fall where they may.

The tenancy rests fundamentally, as the majority points out, on the fiction or artificial contrivance of the unity of the spouses as if they constituted a separate juristic third person, with the property being held by each spouse seized of the whole and not of a share or divisible part. And that unity is indestructible by the unilateral act of either so long as the marriage subsists. Such was the theory on origin in England and has always been accepted in New Jersey both before and after the Married Women's Act. *Den ex dem. Hardenbergh v. Hardenbergh*, 10 *N. J. L.* 42 (*Sup. Ct.* 1828); *Den ex dem. Wyckoff v. Gardner*, 20 *N. J. L.* 556 (*Sup. Ct.* 1846); *Washburn v. Burns*, 34 *N. J. L.* 18 (*Sup. Ct.* 1869); *Gery v. Gery, supra.* A consequence early said in England (principally by Blackstone in his *Commentaries*) to flow from this concept (whether rightly or wrongly from the theoretical viewpoint is presently immaterial) was that neither spouse could separately, or without the assent of the other, dispose of or convey away *any part*. In the first case on the estate in New Jersey this consequence was repeated and recognized. *Den ex dem. Hardenbergh v. Hardenbergh, supra,* 10 *N. J. L.,* at *page* 45. It was shortly modified here, however (and we are not concerned with how the law remained in England or elsewhere, see *Hopper v. Gurtman,* 126 *N. J. L.* 263, 276 (*E. & A.* 1940)), by our holding that the unity could be broken during the joint lives to the extent that the husband, without the wife's concurrence, "could devise, alien or mortgage his interest during his own life" so long as such did not "prejudice her rights in case she survive." *Den ex dem. Wyckoff v. Gardner, supra,* 20 *N. J. L.,* at *pages* 560, 563. And by virtue of *jure uxoris,* he could do the same with the wife's interest. The majority concludes, by reasoning therefrom, that because of the absence of such prejudice the husband could convey his chance of survivorship and so the ultimate fee simple, to be nullified if he predeceased. This, I submit, is unwarranted. (The confessed inability to find any English cases before 1776 on the question is significant

to me. Quite probably no one conceived there was any such right in view of the indestructible unity theory.) In *Gardner* the wife was still alive and the only question before the court was whether the husband alone could validly mortgage his interest (which of course included the wife's) *for his life.* All the court held was that he could and that the mortgagee was entitled to possession on default. It was not concerned with the situation in the event the wife died first, and the opinions must be read in that light. To me they are no authority for the majority's position.

While it may sound logical to reason from the language in *Gardner*, as the majority does, logic cannot overcome the theoretical incidents of the tenancy. Lack of prejudice to the wife if the majority's view is followed, the supposed incongruity of an opposite result with the husband's power over property held solely by the wife and pure logic are, fortunately or unfortunately, quite beside the point in dealing with this "peculiar estate."

The reason I feel the majority arrives at what to me is this legally wrong premise goes back to the unity theory previously mentioned and what takes place when the first spouse dies. On this event, as Chief Justice Weintraub so tersely puts it in his dissenting opinion, nothing accrues. During coverture neither spouse "owns a separate, distinct interest in the fee; rather each and both as an entity own the entire interest. Neither takes anything by survivorship; there is nothing to pass because the survivor always has the entirety." While this may seem incomprehensible to the modern legal mind, and I confess to a somewhat similar feeling, the concept must remain immutable so long as the tenancy exists in this State in its present form. Thus the unity cannot be broken and the right of survivorship destroyed at law, presently or contingently, by unilateral action. Such to me is the only sound view, best expressed by Professor Walsh in his authoritative *Commentaries* (*op. cit.*):

"The right of survivorship cannot be destroyed at law by a conveyance by either breaking the unities. That is the essential dif-

ference between a joint tenancy and an estate in entirety. Therefore such conveyance in fee is void at law, and the chance or possibility of survivorship is inalienable at law." (*vol. 2, p. 35*)

But this does not mean that voluntary deeds or mortgages of the whole interest of one spouse are not and should not be given effect to put the entire fee in the grantee if and when, that spouse survives. Such result is and should be reached, not on the erroneous theory of power to alienate the right of survivorship, but by equitable estoppel. Again I quote Walsh:

"But the deed void at law becomes effective in equity on the grantor's survival because equity by estoppel does not permit him to set up the invalidity of the deed; he is bound by his act in selling or mortgaging the property or his interest therein in fee and accepting the purchase price or loan, and justice demands that the void deed or mortgage be given effect as though it were valid." (*vol. 2, pp. 35–36*)

This approach has been approved in New Jersey. *Den ex dem. Wyckoff v. Gardner, supra,* 20 *N. J. L.,* at *pages* 560–561, 563. *Cf. Bilder v. Robinson,* 73 *N. J. Eq.* 169, 172 (*Ch.* 1907). I submit that it can be the only true basis of decisions in other states purportedly supporting the majority's premise, see 2 *American Law of Property, p.* 28, n. 21; 166 *A. L. R.* 969, 971–974 (except, of course, in those jurisdictions, of which New York is an example, in which married women's acts and other similar legislation have been given a much broader effect than in New Jersey. See *Bilder v. Robinson, supra,* 73 *N. J. Eq.,* at *page* 173).

It must follow that, absent the legal right to alienate the chance of survivorship voluntarily, there is no right to involuntarily alienate through execution sale. Professor Walsh says:

"On a sale on execution of the separate interest of a spouse in the event of the survival of such debtor thereafter, see *Hoffman*[n] *v. Newell,* 249 *Ky.* 270, 60 *S. W.* 2d 607 [89 *A. L. R.* 489] (1933), arguing that the expectancy passes subject to defeat by survivorship of the other spouse; *Hetzel v. Lincoln,* 216 *Pa.* 60, 64 *A.* 866 (1906) ; *Pos*[r]*ohenski v. Am. Alliance Ins. Co.,* 317 *Pa.* 410, 176 *A.* 205 (1935) ; *Cole Mfg. v. Collier,* 95 *Tenn.* 115, 31 *S. W.*

·1000 [30 *L. R. A.* 315] (1895). As explained above, the sale of the separate interest of each in the fee is given effect in equity based on estoppel, and as [*sic*] a sale on execution is at law, with no elements of estoppel. It is clear that these cases cannot be approved as against the cases in most states holding *contra.*" (*op. cit., p.* 37, *n.* 16)

The result may be said to give in modern times, as a matter of policy, an undesirable shield from creditors, even those willing to speculate. Perhaps that was one of the original purposes for the creation of the estate. However, any change should be brought about only by prospective legislation and not by retrospective judicial fiat.

So much for theory. Turning to expressions by our highest court which it may well be said the bar has relied upon, I find a direct statement in *Schulz v. Ziegler,* 80 *N. J. Eq.* 199 (*E. & A.* 1912), in the quoted opinion below of Vice-Chancellor Walker, substantially adopted by Justice Parker for the court in a unanimous decision. There a father and mother were tenants by the entirety. The father conveyed his entire interest to his daughter, who sought partition against her mother. A motion to strike the bill was denied and the decree affirmed. The vice-chancellor said:

"What they became by virtue of the father's conveyance to the daughter was tenants in common for the joint lives of the parents. The father's conveyance to the daughter did not operate in anywise to limit the estate of the wife or her right to the survivorship, and it seems that it will not defeat his right of survivorship, but that it amounts only to a conveyance of his right of possession during his life, and that it cannot operate to let in a third party as tenant by entirety with his wife. That estate exists only between husband and wife, and neither can dispose of any part of it without the assent of the other; the peculiar interest and estate not being severable. *Den ex dem. Wyckoff v. Gardner,* 20 *N. J. L.* (*Spenc.*) 556. The husband can, however, alienate his interest in the estate for his own life. *Ibid.* See also *Servis v. Dorn,* 76 *N. J. Eq.* (6 *Buch.*) 241. Life tenants may be tenants in common and their estates may be partitioned. *Roarty v. Smith,* 53 *N. J. Eq.* (8 *Dick.*) 253, 255. The defendant is entitled to the enjoyment of her estate in the lands during the lifetime of herself and her husband by virtue of the married woman's act of 1852. *Servis v. Dorn, supra.* The complainant is entitled to the enjoyment of the estate and interest in

the lands which she derived from her father's conveyance during the joint lives of her father and her mother, the defendant. The first section of our partition act (*P. L.* 1898, *p.* 644; [*C. S. p.* 3897]), gives the right to partition to tenants in common, and the parties to this suit are such. True, their estate is less than a fee simple, but it is an estate for the joint lives of the parents of the complainant, and such an estate is partible. If the premises should prove not to be susceptible of division between the parties, and shall be ordered to be sold, *the purchaser's estate will terminate upon the death of either Mr. or Mrs. Ziegler.*" (80 *N. J. Eq.*, at *page* 200; emphasis added)

Even closer is the statement by the same judge, then Chancellor, in *Zubler v. Porter,* 98 *N. J. L.* 444 (*E. & A.* 1922), also unanimous:

"This conveyance [a sheriff's deed to the wife following execution on a judgment against the husband] divested out of Mr. Butterworth and vested in Mrs. Butterworth, as trustee, the former's estate in the land as potential tenant in common with her for the joint lives of both of them, *leaving him only the remainder of the entire estate in the event of his surviving her.*" (98 *N. J. L.*, at *page* 447; emphasis added).

The rationale of the decision, and indeed the very language of Justice Case for the same unanimous court in *Gery* in 1933, appears to me to have the same connotation. See 113 *N. J. Eq.*, at *pages* 64–65.

While the statements in all these opinions may be said to have been unnecessary to the actual decision and therefore *dictum,* they are to me expressions of the strongest effect in that category and of the character lawyers would naturally and justifiably rely upon. It is hard to imagine judges of the learning of Walker, Parker and Case in the field of real property at common law expressing or approving such views without being certain of their correctness. The majority seems to think *Schulz, Zubler* and *Gery* are not persuasive, and this upon contrary assertions by single judges, one at the trial level and citing no authority and the other sitting alone on an appeal from the district court. *Taub v. Shampanier,* 95 *N. J. L.* 349 (*Sup. Ct.* 1920); *J. & A. Steinberg Co. v. Pastive,* 97 *N. J. Eq.* 52 (*Ch.* 1925). To

me these statements are just as much *dictum* as those in the Court of Errors and Appeals, but entitled to very little weight. And then we have the holdings precisely in point in recent years of trial judges by well-documented opinions in *Zanzonico v. Zanzonico*, 24 *N. J. Misc.* 153 (*Sup. Ct.* 1946) and *Dworan v. Miloszewski*, 17 *N. J. Super.* 269 (*Cty. Ct.* 1952), which the bar must also have relied upon. Nor can I see how it can be seriously urged that a seemingly contrary observation in one Appellate Division opinion subsequent to the cases just cited, and a query in another, would completely reverse reliance by lawyers on the three highest court statements, one almost half a century old, and the two recent exact decisions at the trial level.

I agree thoroughly with the observation of the Chief Justice, borne out by the observations of the *amicus curiae* and my own experience in practice, that the bar generally has been of the opinion that the ultimate fee was not involved as a result of a judgment against or bankruptcy of one tenant by the entirety and has acted accordingly in passing titles or advising action concerning such judgments. The opposite point of view, illustrated by defendants in this case, would seem to be a rarity. So, to my mind, the result reached by the majority has the definite and dangerous possibility of upsetting many more titles relied upon for years and causing activation of dormant judgments with similar effect than if we were to hold that the contingency of survivorship cannot legally be voluntarily or involuntarily alienated. And, as I have said, the latter to me is the only sound and correct conclusion.

For the reasons here expressed, as well as for those set forth in the dissenting opinion of the Chief Justice in which I concur, I would affirm the judgment below.

*For reversal*—Justices BURLING, JACOBS, FRANCIS, PROCTOR and SCHETTINO—5.

*For affirmance*—Chief Justice WEINTRAUB, and Justice HALL—2.