Close *v.* Close.

ELLEN M. CLOSE, appellant,
and
JOSEPH B. CLOSE, respondent.

1. The provisions of the fifty-sixth section of the chancery act, (*Rev.* p. 113,) which give to decrees in chancery the force, operation and effect of a judgment at law in the supreme court, apply only to such decrees as resemble such a judgment in the pecuniary obligations which they impose.

2. Such decrees become liens upon lands, as against persons not parties to the suit, only after an abstract thereof is filed in the office of the clerk of the supreme court, and their lien is liable to be divested by a sale under a subsequent judgment at law, whereon execution was issued before execution on the decrees.

3. The specific mention and description of lands in the decree or bill of complaint, which, under the proviso of this fifty-sixth section, will preserve the lien of the decree upon those lands, against all persons, without filing the abstract as aforesaid, must be a mention and description of such lands as subject to some equitable lien which it is designed to enforce or create.

4. A decree directing a defendant to pay a certain sum of money to the complainant, and declaring that it shall constitute a lien upon all the defendant's real and personal property in New Jersey, creates no lien upon lands, as against persons not parties thereto, until the abstract is filed as aforesaid.

5. Where the court of chancery has seized only the rents and profits of the defendant's lands to satisfy its decree, the fee still remains subject to levy and sale under an execution at law.

6. In a contest between an execution on a judgment at law and an execution on a money decree in chancery, the writ first delivered to the sheriff and levied on the lands is entitled to priority.

On appeal from an order of the chancellor.

*Mr. C. Parker,* for appellant.

*Mr. Winfield* and *Mr. Gilchrist,* for respondent.

DIXON, J.

On bill filed October 19th, 1870, by Ellen M. Close against her husband, Joseph B. Close, for divorce, *a mensa et thoro* and alimony, such divorce was decreed; and on January 29th, 1875, a further decree was made, that the defendant should pay to the complainant the sum of $3,000 annually, commencing on the second Monday of February then next, as permanent alimony; and should also pay to her on the day last named, $1,225 as arrears of alimony *pendente lite,* and $1,378 as counsel fees, besides taxable costs. This decree further ordered, that the defendant, within ten days after service of it on him, should give security for the payment of the permanent alimony; and that, in case of his failing to give security or to pay, the complainant should be at liberty to apply to the court to award and issue process for the immediate sequestration of the defendant's personal estate, and the rents and profits of his real estate, and to appoint a receiver thereof, or such other process as might be proper. The chancellor also therein ordered and adjudged that the

decree should, from the date thereof, be a lien upon the personal and real estate of the defendant in New Jersey; and that the complainant should have execution according to the practice of the court for the recovery of the costs, counsel fees, and arrears of alimony *pendente lite* aforesaid.

By a decree dated July 27th, 1875, it was ordered that the complainant should have execution, according to the practice of the court, for a further counsel fee and costs then allowed, and that that decree should likewise be a lien upon all the real and personal estate of the defendant in New Jersey.

On November 3d, 1875, it was further ordered and decreed that execution should immediately issue against the goods and chattels, lands and tenements of the defendant, for the recovery of the alimony in arrears and due on the first Monday in February, 1875, and of the costs and counsel fees in the former decrees mentioned; and that process should issue for the immediate sequestration of the personal estate and the rents and profits of the real estate of the defendant, and that C. B. be appointed receiver thereof; and that forthwith, upon the service on the defendant of a copy of the decree, he should sign, seal and deliver to said receiver an assignment of all his right and title to all his personal estate, and the rents and profits of his real estate. And it was further ordered, that the receiver should proceed forthwith to take possession of all said personal estate and rents and profits, and apply them to the payment of said permanent alimony as it had accrued and should accrue, and then to the payment of the arrears of alimony *pendente lite*, and costs and counsel fees aforesaid, unless they were raised by the execution ordered. And the receiver was thereby required, before entering upon the discharge of his duties, to make oath faithfully to perform the same.

In pursuance of these decrees, an execution against the goods and chattels, lands and tenements, of the defendant was recorded November 26th, 1875, and delivered on Decem-

Close *v.* Close.

ber 12th, 1875, to the sheriff of Hudson county, by whom levy was made on a tract of land in Bayonne.

On November 27th, 1875, judgment was entered in the supreme court, on bond and warrant of attorney against the defendant, and in favor of Charles H. Winfield, his solicitor in the divorce suit, and on the same day *fieri facias de bonis et terris* thereon was rendered, and on November 30th, 1875, delivered to the same sheriff, who at once levied on the Bayonne property.

Under these circumstances the complainant presented to the chancellor her petition against the defendant and his solicitor, alleging that said judgment and execution in favor of the solicitor were the result of an improper conspiracy to defeat the decrees in her favor and a contempt of the court, and asking that the solicitor might, by order of the chancellor, be restrained from enforcing payment of his judgment by sale of any part of the Bayonne tract, or of any property of the defendant sequestered for the payment of her alimony and maintenance; and that in default of such order, decree might be made settling the rights and priority of said judgment and execution of the solicitor in relation to her execution, and in relation to the lien for future alimony decreed to her; and for such other relief as might be equitable and right.

On this petition, after answers denying all improper purpose, the chancellor made order refusing to restrain the enforcement of the execution of Mr. Winfield, as requested by the petitioner, and decreeing that the rights and priority of his judgment and execution, in relation to the petitioner's execution, were according to the dates of the executions being levied, and not otherwise.

From this order the petitioner appeals to this court. For the purposes of this appeal, the *bona fides* of the Winfield judgment and execution is not in question. The petitioner has not chosen to reply to the answers averring it, or to adduce any evidence in contravention of their truth. The fact that Mr. Winfield was the solicitor of the defendant in

the proceedings in which the petitioner obtained her decrees, has no other significance now than to show his knowledge of them at the time his judgment was taken. Under these circumstances, is there any error in the order now under review?

The petitioner insists upon several grounds for postponing the supreme court execution to her claims in the Bayonne tract. First, she urges that the decrees in her favor, have, by virtue of the statute, (*Chancery*, § 56, *Rev.* p. 113) from the date of their signing, the force, operation and effect of a judgment at law in the supreme court, and therefore, so far as they adjudge money to be due from the defendant to her, they constitute liens upon the defendant's lands, as would such a judgment. It is difficult to see how this construction, if well founded, would aid her, for should there be accorded to these decrees the force of a judgment at law as a lien upon lands, nevertheless that lien is liable to be legally divested, as would the lien of such a judgment, by a sale under execution issued upon the later Winfield judgment, and levied on the lands by the sheriff before any execution on these decrees reached him. And in a contest between the executions thus issued, the priority belongs by statute to that first delivered to the sheriff. But that this claim rests on no substantial basis appears by adverting to the proviso of the section cited, which declares that no decree in chancery shall, as against any person not a party thereto, become a lien upon or bind any lands other than those specifically mentioned and described in such decree, or in the bill of complaint on which the same is founded, until a certain abstract thereof is filed in the office of the clerk of the supreme court, a requirement not complied with in this case. It is sought to evade the force of this enactment on the ground that the decree of January 29th does describe the tract at Bayonne with sufficient accuracy to satisfy the proviso. But if even this were in fact true, as I think it is not, yet any description of that tract for the purpose for which it is referred to in this decree, would be ineffectual as a compliance with that law. The decree

Close *v.* Close.

merely speaks of it as the defendant's unimproved real estate in Bayonne, wherein the complainant has an inchoate right of dower, which she is willing to release on certain terms in case of sale, and prescribes those conditions on performance on which it directs her to execute such release. But the evident design of this exception in the statute is confined to that class of cases where the court intends to create or declare a specific lien upon certain designated lands because of some circumstances which in equity give rise to such a lien. Before the passage of the act of June 13th, 1799, which is now the first clause of the fifty-sixth section spoken of, a decree for the payment of money not chargeable as a specific lien, was *in personam* only. This act of June 13th, 1799, which followed closely the act of February 18th, 1799 declaring the lien of judgments at law, gave to decrees in equity the force, operation and effect of such judgments. This statute was not intended to embrace all decrees and to charge all the lands of all defendants with their performance, but applied only to such decrees as resembled judgments at law in the pecuniary obligations they imposed, and made them equivalent to such judgments in their effects. The act of March 8th, 1839, which, in the last revision, became the proviso of the section mentioned, was designed, under just interpretation, to reach only the decrees which before had operated as judgments in the supreme court, and made the docketing of such decrees with the clerk of that court a condition precedent to their constituting against all persons liens upon the defendant's lands; but, lest the general language of the act, "No decree of the court of chancery," should be liable to misconstruction, those creating or enforcing equitable liens on lands specifically mentioned and described in the decree or bill of complaint as subject thereto, were expressly excepted. Decrees and bills describing lands for any other purpose, are hardly within the words, and certainly are not within the spirit of this exception. As creating statutory liens, therefore, these decrees cannot avail the petitioner.

Secondly. She urges that because the decrees themselves adjudge that, from the date thereof, the moneys which they direct the defendant to pay shall be a lien upon his personal and real estate in New Jersey, therefore they are a lien thereon. This form of decree in alimony cases is not novel in this state, and it probably has come down to us unchallenged, from a time when it was, to some extent at least, declaratory of a legal fact. It was used in *Richmond* v. *Richmond*, (1 *Gr. Ch.* 90,) before the passage of the act of March 8th, 1839, already mentioned. That it was ever regarded as creating a lien on the defendant's personal estate cannot, I think, be shown by any adjudged case or by the understanding of the profession. All it can mean as to personalty, is that it may be enforced against such property by lawful process. As to the realty, the moneys due under the decree were, by reason of the statute in force when this form was adopted, a lien thereon against every one without further ceremony, and the decree simply gave expression to that fact. But when in 1839 the law changed in this respect, and enacted that such a lien should not exist as against a person not a party to the suit until the docketing of the decree, the retention of the old form could not give to the decree a force which the statute denied it. The statute is more potent than the decree, and the latter must be construed in accordance with the terms of the former; that is, the lien, for which the decree provides, is efficacious against others than the defendant only when the directions of the statute have been observed. Hence this clause in the decrees does not aid the petitioner against the Winfield judgment.

In the third place, the petitioner relies upon the decree of November 3d, ordering process for the sequestration of the rents and profits of the realty, appointing a receiver thereof, and directing him to take possession of the same, and the defendant to assign them to him. It is not, however, necessary to pass upon the effect of this decree, nor is the matter so presented that we should assume to render final judgment upon it. Whether the decree, *proprio vigore*, will bind the

rents and profits of the land, or process of sequestration must first issue against them; whether the receiver had taken the oath directed, or assumed possession of the property committed to him; whether the decree requiring the defendant to assign had been served upon him, so that, by his default, it became itself a conveyance before the Winfield judgment or execution was operative—may all be important inquiries in determining the rights of the parties, and the facts involved in these questions are not laid before us. But if all this machinery had been put in force before the judgment at law, still, I think, it should not change the order appealed from. The sequestration, the receiver's possession, the assignment, can reach only the rents and profits of the land; notwithstanding these the fee was to remain in the defendant; and that fee would continue to be liable to execution at law. Whether the purchaser of that fee under such an execution, will take it free from or subject to the burden of having the rents and profits applied to the petitioner's claims, is a matter for future determination. However that may be, the sale under the Winfield execution ought not to be restrained, and the proceeds of that sale must be appropriated to that execution in preference to the petitioner's execution, which was delivered to the sheriff last. And to this effect only is the decree complained of. That decree should therefore be affirmed, with costs.

Decree unanimously reversed.