158 N.J. Super. 111 (1978)
385 A.2d 890
SUSAN M. SISCO, PLAINTIFF-RESPONDENT,
v.
NEW JERSEY BANK, N.A., DEFENDANT-APPELLANT, AND JOSEPH F. JOB, BERGEN COUNTY SHERIFF, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1978.
Decided April 5, 1978.
*113 Before Judges LORA, SEIDMAN and MILMED.
Mr. Allan A. Maki argued the cause for appellant.
Mr. Edward V. Torack argued the cause for respondent.
*114 Defendant Joseph F. Job, Bergen County Sheriff, did not file a brief.
The opinion of the court was delivered by SEIDMAN, J.A.D.
This appeal by defendant New Jersey Bank concerns the priority between a judgment obtained by it against the former husband of plaintiff herein, on which, pursuant to a writ of execution, the sheriff levied on the judgment debtor's interest in the marital home, record title to which was in the judgment debtor and plaintiff as tenants by the entirety, and "liens" on the marital home and the proceeds of the sale thereof, created by the divorce judgment in favor of plaintiff.
The chronology of events begins with the entry of the divorce judgment on March 9, 1975. It provided, in part, for the sale of the marital home, the net proceeds to be divided 60% to plaintiff and 40% to her spouse. These shares were "declared to be liens upon the said marital home and proceeds of sale." The judgment further directed the payment of certain debts out of the husband's share of the net distribution from the sale of the house, "which [debts] are declared to be liens." These debts, totalling $14,750, included, in addition to other items, support arrearages "reduced herein to a judgment" in the amount of $3,950, a counsel fee of $1,500, and moneys due department stores on charge accounts.[1] On March 18, 1977 plaintiff's attorney caused an abstract of judgment to be entered upon the civil judgment and order docket of the Superior Court. The abstract contained an enumeration of the indebtednesses listed in the divorce judgment.
The bank's judgment against the former husband, in the amount of $17,905.20 and costs, was entered on March 21, 1977, and a writ of execution was issued four days later. *115 On April 20, 1977 the Bergen County Sheriff levied on "all the right, title and interest, of the defendant, Stuart E. Sisco,"[2] in the former marital home.
Plaintiff immediately informed the bank of the divorce judgment and claimed priority over the bank's judgment to the extent necessary to comply with the terms of her judgment. She thereafter filed her complaint in the Law Division seeking a determination that "she is the holder of a valid equitable interest and lien in such real property which is not subject to the lien of [the bank's] judgment and is not subject to the levy and execution," and a direction for the discharge from the levy and lien of her "equitable interest and equitable lien as created by the said judgment of divorce."
After a hearing, judgment was entered in plaintiff's favor which, among other things, "discharg[ed] and releas[ed] the lien and levy issued by defendant * * * as against the equitable lien which exists in Susan M. Sisco's favor in the sum of $12,750 from Stuart P. Sisco's interest in the property," and directed the conveyance by the former husband of his interest in the marital home "free of any lien, levy or other encumbrance" resulting from the judgment of the bank. This appeal ensued.
The bank contends that (1) plaintiff does not own a valid interest in her former husband's share of the real estate, levied upon by the bank; (2) as the first levying creditor it is entitled to "priority of the husband's share to be satisfied in full before any other judgment creditor, including the plaintiff," and (3) plaintiff's failure to record the Chancery Division judgment prior to the levy and execution is fatal to her claim. These contentions are, of course, disputed by plaintiff. She argues that (1) she holds a valid equitable interest in her former husband's share of the proceeds of the sale of the marital home which cannot be affected by execution *116 and levy upon defendant's judgment; (2) her equitable liens in the share of the proceeds of sale are entitled to priority over the claim of the judgment creditor; (3) failure to record the Chancery Division judgment prior to the execution and levy was not fatal to her claim, and (4) to allow defendant to prevail would frustrate the intent and purpose of the divorce judgment.
To resolve the issue of priority between the bank's judgment and plaintiff's "liens" assertedly derived from the divorce judgment, it is preferable that we deal separately with the one pertaining to the division of the marital property and plaintiffs interest therein, and that with respect to the payment of the enumerated indebtednesses out of the former husband's share of the proceeds from the sale of the home. We consider the latter first.
In his opinion, reported at 151 N.J. Super. 363 (Law Div. 1977), the trial judge (the same one who heard the divorce matter and entered the judgment therein), reasoned that the divorce judgment had created an equitable lien in plaintiff's favor on her former husband's 40% interest in the subject property, and that the proceeds from the sale of the property were to be applied in part to satisfy the first mortgage therein and the equitable liens "which were created for the benefit of Mrs. Sisco." 151 N.J. Super. at 370. He said that any attempt to execute on her judgment and have a sheriff's sale "would have been in direct contravention of the court order requiring the house to be put on the open market for sale." Id. He expressed the view that it would be "anomalous to hold that the plaintiff should have disobeyed a Chancery Division judgment in order to protect her equitable interest in property against subsequent judgment creditors who may choose to execute on property subject to the equitable interest." Id.
Much of the foregoing is in our view irrelevant to the problem confronting us and fails to treat the specific issue of the rights and priorities of a judgment creditor not a party to the divorce proceedings.
*117 The power of a court of equity to create liens in a divorce decree in favor of one of the parties to assure the performance of its terms is not to be doubted. Such form of decree is not novel in this State. Close v. Close, 28 N.J. Eq. 472, 478 (E. & A. 1877); see Richmond v. Richmond, 2 N.J. Eq. 90, 97 (Ch. 1838). But the creation of such liens and their force, operation and effect as to third parties are entirely different matters. Moreover, a distinction must be made between a lien created by the judgment and the lien of the judgment itself.
It is useful preliminarily to recall that generally, at common law, no lien was acquired by a judgment. A judgment lien is a creature of statute, and this is particularly true of judgments or decrees in equity. Joseph Harris & Sons, Inc. v. Van Loan, 23 N.J. 466, 470 (1957). By virtue of N.J.S.A. 2A:16-18 (which has its origin in the act of June 13, 1799  see Joseph Harris & Sons, Inc. v. Van Loan, supra)  Chancery Division judgments, or orders for the payment of money, from the time of entry upon the civil docket, have "the force operation and effect of a judgment of the superior court, law division, and execution may issue there[in] as in other cases, subject, however, to the provisions of section 2A:16-19 of this title." N.J.S.A. 2A:16-19 (the forerunner of which was the act of March 8, 1839, § 3), provides that
* * * [n]o such judgment or order of the superior court, chancery division, * * * shall, as against a person not a party thereto, become a lien or bind any real estate other than that specifically mentioned and described in the judgment, order or decree, or in the complaint, bill of complaint or petition, upon which the same is founded, unless such judgment, order or decree is one for the payment of money from one person to another and
(1) Unless and until an abstract of such judgment, order or decree shall be entered upon the civil judgment and order docket of the superior court * * *.
It is noted in Joseph Harris & Sons, Inc. v. Van Loan, supra, that these statutes have been construed as not intending *118 to embrace all Chancery judgments or decrees, and to charge all the lands of defendants with their performance, but applied only to such decrees as resembled "`judgments at law in the pecuniary obligations they imposed and made them equivalent to such judgments in their effects,' Close v. Close, supra; Rooney v. Rooney, 102 N.J.L. 551 (Sup. Ct. 1926)."
The cited case of Close v. Close, supra, is particularly instructive because of its marked similarity to the facts of the case under review. There, as here, a divorce decree was involved in which, among other things, provision was made for the payment of certain sums to or for the benefit of the wife. In that case the moneys consisted of $1225 as arrears of alimony pendente lite, and $1378 as counsel fees. In each case a lien was created by the decree. In Close the decree was adjudged to "be a lien upon the personal and real estate of the defendant in New Jersey," and it further provided that the complainant should have execution for the recovery of the costs, counsel fees and arrears of alimony pendente lite. Here, the shares of the spouses in the proceeds from the sale of the marital home and the debts to be paid were declared to be liens.
As indicated previously, in the case under review an abstract of the judgment was docketed in the Superior Court, but plaintiff did not proceed further by way of execution and levy. In Close no abstract was docketed; however, an execution was issued on the wife's decree and the sheriff levied upon a tract of land owned by the defendant husband.
In both cases third parties recovered judgments against the defendant husband. The one in Close was obtained after the issuance of the execution on the matrimonial decree. The levy, made upon the same tract of land, was subsequent to that made to satisfy the decree. In the present case the judgment against the former husband was entered and levy made after the docketing of the abstract. The resulting issue in each case was the priority of the lien of the judgment obtained by the third party.
*119 The complainant in Close petitioned the Chancellor for a decree "settling the rights and priorities of said judgment and execution * * * in relation to the execution." The Chancellor decreed that the rights and priority "were according to the dates of the executions being levied, and not otherwise." 28 N.J. Eq. at 475. The Court of Errors and Appeals affirmed.
The court in Close rejected the complainant's assertion that her decree had priority because, under the statute, it had from the time of signing the force, operation and effect of a judgment at law, holding that, as against a person not a party thereto, no Chancery decree became a lien until an abstract thereof was filed in the office of the Clerk of the Supreme Court, a requirement which had not been complied with. 28 N.J. Eq. at 476. The court also said (significantly, in its relevance to the case before us), that even if the decree had the force, operation and effect of a judgment at law so as to constitute a lien upon the defendant's lands to the extent that it adjudged money to be due from defendant to complainant, "that lien is liable to be legally divested * * * by a sale under execution issued under the later Winfield judgment, and levied on the lands by the sheriff before any execution on these decrees reached him." 29 N.J. Eq. at 476.
It is now settled by consistent judicial construction of N.J.S.A. 2A:17-39 over many years that ordinarily the holder of a judgment junior in time gains priority of lien over a senior judgment by first levying upon the land under execution issued on the judgment. Silver v. Williams, 72 N.J. Super. 564, 567 (App. Div. 1962); see Burg v. Edmondson, 111 N.J. Super. 82, 85 (Ch. Div. 1970). In this case plaintiff's judgment for the payment of money was no different from a judgment at law. Unless, therefore, one can point to supervening reasons for not applying this rule of law respecting priority between judgments, it would appear to us that the bank's judgment, by virtue of the levy upon defendant's right, title and interest in the marital *120 home, was superior to that portion of plaintiff's judgment for the payment of money. We discern no sound reason to conclude otherwise on the facts here present.
It is a fact that the divorce judgment makes reference to the matrimonial home owned by the parties as tenants by the entireties and describes its location by street address and municipality. Also to be noted is the exception contained in N.J.S.A. 2A:16-19 covering real estate "specifically mentioned and described in the judgment." But the exception has no application here. In Close the complainant sought to avoid the effect of her omission to file an abstract of the decree by availing herself of the like exception in the statute then in effect. The court was not persuaded:
* * * The decree merely speaks of it as the defendant's unimproved real estate in Bayonne, wherein the complainant has an inchoate right of dower, which she is willing to release on certain terms in case of sale, and prescribes those conditions on performance on which it directs her to execute such release. But the evident design of this exception in the statute is confined to that class of cases where the court intends to create or declare a specific lien upon certain designated lands because of some circumstances which in equity give rise to such a lien * * * The act of March 8th, 1939, which, in the last revision, became the proviso of the section mentioned, was designed, under just interpretation, to reach only the decrees which before had operated as judgments in the supreme court, and made the docketing of such decrees with the clerk of that court a condition precedent to their constituting, against all persons, liens upon the defendant's lands; but, lest the general language of the act, "No decree of the court of chancery," should be liable to misconstruction, those creating or enforcing equitable liens on lands specifically mentioned and described in the decree or bill of complaint as subject thereto, were expressly excepted. Decrees and bills describing lands for any other purpose are hardly within the words, and certainly not within the spirit of this exception. As creating statutory liens, therefore, these decrees cannot avail the petitioner. [28 N.J. Eq. at 477]
The trial judge here was of the view that "at the time the divorce decree was entered, an equitable lien in the amount of $12,500 was created in favor of Mrs. Sisco on Mr. Sisco's 40% interest in the subject property." We perceive no significance *121 in the fact that the lien in question may have been created by the judgment, as distinguished from the lien of the judgment itself. An analogous argument was advanced by the complainant in Close. She urged that "because the decrees themselves adjudge that from the date thereof, the moneys which they direct the defendant to pay shall be a lien upon his personal and real estate in New Jersey, therefore they are a lien thereon." 28 N.J. Eq. at 478. The court said:
* * * That it [the form of the decree] was ever regarded as creating a lien on the defendant's personal estate cannot, I think, be shown by any adjudged case or by the understanding of the profession. All it can mean as to personalty, is that it may be enforced against such property by lawful process. As to the realty, the moneys due under the decree were, by reason of the statute in force when this form was adopted, a lien thereon against every one without further ceremony, and the decree simply gave expression to that fact. But when in 1839 the law changed in this respect, and enacted that such a lien should not exist as against a person not a party to the suit until the docketing of the decree, the retention of the old form could not give to the decree a force which the statute denied it. The statute is more potent than the decree, and the latter must be construed in accordance with the terms of the former; that is, the lien, for which the decree provides, is efficacious against others than the defendant only when the directions of the statute have been observed. Hence this clause in the decrees does not aid the petitioner against the Winfield judgment. [28 N.J. Eq. 478]
The principles of law applied in Close are as viable today as they were a century ago and are reflected in N.J.S.A. 2A:16-18 and 2A:16-19. We are entirely satisfied that the trial judge was mistaken in his concept of the applicable law. Clearly, on the facts here present, the lien of the bank's judgment, by virtue of the levy upon the former husband's right, title and interest in the marital home, is prior to any lien which may exist thereon in plaintiff's favor with respect to the above-mentioned sum of $12,750. To the extent that the judgment under review is inconsistent with the foregoing, it must be reversed.
*122 However, the lien which plaintiff asserts with respect to the equitable division of the marital home rests upon a different footing. It does not arise, as did the other, from a pecuniary obligation imposed by the judgment comparable to a judgment at law. Rather, it pertains to an interest in property. We do not agree with the bank's position that it "has priority to 50% of Stuart E. Sisco's interest in the real estate."
Courts are now empowered in divorce proceedings to allocate marital assets equitably between the spouses, regardless of ownership. Painter v. Painter, 65 N.J. 196, 213 (1974). To that end the court may direct the sale of an asset and the distribution of the proceeds thereof between the spouses in such proportions as it deems fair in the circumstances. This applies as well to the marital home, irrespective of its ownership by the spouses, prior to the divorce judgment, as tenants by the entirety. The court may order one spouse to convey real property, or a portion thereof or interest therein, to the other, in implementation of the division of the marital assets. In this case the provision in the judgment was for the sale of the marital home, with the net proceeds to be divided 60% to the former wife and 40% to the other spouse. This was tantamount to a conveyance to the wife, upon the termination of the tenancy by the entirety, of an undivided 60% interest in the realty as a tenant in common, to be realized, however, from the net proceeds of the sale of the property. To the extent necessary to secure that interest pending the sale, the divorce judgment imposed an equitable lien in plaintiff's favor upon the judgment debtor's right, title and interest in the marital home. Cf. Rutherford Nat'l Bank v. H.R. Bogle & Co., 114 N.J. Eq. 571, 573-574 (Ch. 1933).
The trial judge here correctly remarked that in the case of a tenancy by the entirety, a levying judgment creditor of one of the spouses, or purchaser at an execution sale, acquires no greater rights in the property than those of the debtor spouse. 151 N.J. Super. at 368. See Dvorken v. *123 Barrett, 100 N.J. Super. 306, 308 (App. Div. 1968), aff'd 53 N.J. 20 (1968). While we do not necessarily subscribe to everything the trial judge said on the subject, we agree with his ruling that the debtor spouse, pursuant to the divorce judgment, held only a 40% interest in the subject property. Or, to put it another way, so much of his undivided interest as a tenant in common became encumbered by the lien imposed thereon by the judgment as was necessary to assure receipt by the plaintiff of her 60% share of the net proceeds of the sale.
It has been held that
* * * [t]he general lien of a judgment creditor upon his debtor's lands is subject to such equities as existed against them in favor of third persons when such judgment was recovered, and a court of equity will so control the legal lien of such judgment as to restrict and limit it merely to the actual interest of the judgment debtor in the property, so as to fully protect and preserve the rights of persons having prior equitable liens or interests in such property. This principle is founded upon the equitable doctrine that a judgment and the legal lien of its docket bind only the actual interest of the judgment debtor and is subject to all existing equities which are valid as against such debtor. [Rutherford Nat'l Bank v. H.R. Bogle & Co., supra, 114 N.J. Eq. at 578-579]
We therefore conclude that plaintiff is entitled to a 60% interest in the marital home and the net proceeds of the sale thereof free of any liens resulting from the bank's judgment.
In accordance with the foregoing we reverse so much of the order of July 26, 1977 as discharges and releases the bank's lien and levy "as against the equitable lien which exists in Susan M. Sisco's favor in the sum of $12,750 from Stuart P. Sisco's 40% interest in the property located at 531 Summit Avenue, in the Borough of Franklin Lakes, New Jersey."
That portion of the order which directs "that Stuart P. Sisco will sign a deed in escrow conveying his interest in the former marital home to the contract vendee, Jenny Lou Opremcak, free of any lien, levy or other encumbrance resulting *124 from the judgment of defendant, New Jersey Bank," is modified by adding thereto the following: "The said Stuart P. Sisco's 40% share of the net proceeds of said sale, without regard to the aforementioned sum of $12,750, shall be applied toward the satisfaction, in whole or in part, of the judgment of defendant, New Jersey Bank, and the said bank shall, if paid in full, execute and deliver a warrant for the satisfaction of its judgment, or, if a balance shall remain on its judgment, the warrant shall be for the partial satisfaction of the judgment and the said bank shall execute a release of the subject property from the lien of its judgment."
The provision in said order for the payment of the enumerated judgments from Stuart P. Sisco's 40% interest in the proceeds of the sale is modified by adding thereto the proviso that such payments shall be made out of the excess, if any, remaining after the payment to the bank on account of its judgment.
The remainder of said order is deemed modified to the extent necessary to accomplish the foregoing.
The cause is remanded for the entry of a consistent amended order. We do not retain jurisdiction.
NOTES
[1] The trial judge in these proceedings excluded from the lien the sum of $2000, a loan payable by Mr. Sisco alone which did not inure to plaintiff's benefit.
[2] Also referred to in the record as Stuart P. Sisco.