700 A.2d 894

WENDY VANDER WEERT, PLAINTIFF–RESPONDENT, v. JEF-FREY VANDER WEERT, DEFENDANT–RESPONDENT, v. COHN LIFLAND PEARLMAN HERRMANN & KNOPF, ESQS., INTERVENOR–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 9, 1997—Decided September 25, 1997.

340

Before Judges PRESSLER, WALLACE and CARCHMAN.

*Albert L. Cohn* argued the cause for appellant (*Cohn Lifland Pearlman Herrmann & Knopf,* attorneys; *Mr. Cohn,* of counsel and on the brief with *Audra DePaolo*).

*Marvin H. Sunshine* argued the cause for respondent Wendy Vander Weert (*Sunshine, Atkins, Minassian & Tafuri,* attorneys; *Stephen A. Gallo,* on the brief).

Respondent Jeffrey Vander Weert did not file a brief.

**PRESSLER, P.J.A.D.**

Appellant Cohn Lifland Pearlman Herrmann & Knopf, Esqs. (Cohn Lifland), a New Jersey law firm, appeals from the denial of its post-judgment motion to intervene in this divorce case. We reverse the order denying the motion, and since the merits of appellant's legal position and claim for relief have been fully argued, we have opted to decide the question raised. We now dismiss appellant's application for relief as without merit.

The issue before us is the extent of the interest in the marital residence obtained by an attorney for one of the parties who, during the pendency of a divorce action and in order to secure payment of his legal fees, takes from his client a mortgage on property owned by the parties as tenants by the entirety. We hold that in these circumstances the lien created by the mortgage extends only to that portion of the property, if any, awarded to the attorney's client by way of equitable distribution.

Appellant was retained by defendant Jeffrey Vander Weert in July 1992 to represent him in the divorce action brought against him by plaintiff Wendy Vander Weert. As security for appellant's fees, defendant, in October 1992, gave appellant a mortgage on the marital residence owned by him and plaintiff as tenants by the entirety evidencing a debt of $16,363.87 and "such other sums as become due Lender subsequent to September 29, 1992." Plaintiff did not execute the mortgage documents, which did not, in express terms, limit the lien to defendant's interest in the property. Defendant was represented in the mortgage transaction by other counsel. The mortgage was promptly recorded.

When plaintiff learned of defendant's unilateral execution of the mortgage and its recording, she brought a motion seeking its vacation and discharge. By order entered in September 1993, the motion was denied "without prejudice to plaintiff's right to collection of all arrearages and monies due her pursuant to any Orders, decrees and judgments of this Court; the said Mortgage being preserved only as to defendant's interest, if any."

Appellant continued to represent defendant until January 1994 when other counsel was substituted. An ensuing fee dispute between appellant and defendant was ultimately resolved by fee arbitration, which awarded appellant a fee of $124,596.13. In August 1995, that sum was reduced to judgment.

Meanwhile, the contested divorce trial had concluded in February 1995. The court rendered its oral decision in June 1996, at the same time entering a dual judgment of divorce, but leaving all its other dispositions respecting custody, support and equitable distribution to later memorialization. Finally, a conforming judgment, denominated "Amended Judgement of Divorce" to account for the separate June 1996 dual divorce decree, was entered in September 1996. With respect to the marital residence, the divorce judgment directed its sale, specified the parties' joint obligations by which the gross proceeds of sale were to be reduced, and granted each party fifty percent of the net proceeds, providing, however, that defendant's share was to be further reduced by credits owing from him to plaintiff for counsel fees, equitable distribution of other property, unreimbursed medical costs and a joint obligation to plaintiff's father. That portion of the judgment further provided, in no uncertain terms, that these credits were to be paid by defendant to plaintiff "before any liens imposed by the defendant's lawyers against him are satisfied from defendant's share."

Upon being advised of the provisions of the amended judgment of divorce, appellant brought this motion to intervene in order to challenge its express limitation on the scope of the mortgage. As we understand the appellant's assertion both in the trial court and in this court, it argues that its lien on defendant's fifty-percent share of the net proceeds of sale had priority over the adjudicated credits due from defendant to plaintiff. We reject that contention as entirely groundless.

To begin with, appellant does not challenge that provision of the September 1993 order limiting the efficacy of its lien to defendant's interest and defining that interest as what it would ulti-

mately be adjudicated to be after according plaintiff the benefit of her interspousal entitlements from him—that is, defendant's share, if any, awarded him by way of equitable distribution. Indeed, appellant conceded at oral argument that when it took the mortgage from defendant, it understood that it was taking defendant's interest subject to prospective equitable distribution. Thus, it expressly conceded that had the court, by way of equitable distribution, awarded defendant, for example, only twenty percent of the net proceeds of sale, its lien would have been limited to that amount. In light of that concession, its argument seems to be that once the judge declared that the net proceeds would be equally split between the parties, its lien immediately attached to that fifty percent and, consequently, had priority over the award of credits to plaintiff out of defendant's share.

We reject that argument as entirely sophistical. Obviously, the trial court has a number of techniques available to it for distributing the marital assets between the parties. Adjusting the percentages of prospective ownership in a given asset to account for interspousal obligations, which the court could have done, is not conceptually different from an equal division subject to credits, the technique the court chose to employ here. The point, of course, is that once appellant has conceded that its lien attaches only to defendant's interest as equitably distributed, then, as a matter of logical inevitability, it must be deemed also to have conceded that it so attaches irrespective of the particular equitable distribution scheme fashioned by the court.

Although we are persuaded that appellant's concession is dispositive of the appeal before us, there are troublesome issues raised by this appeal that we are constrained to address. We do not, however, comment on the general propriety of a mortgage given by a client to an attorney to secure fees since we are aware that that subject is presently under consideration by a committee appointed by the Supreme Court.

We assume, therefore, for analytical purposes that the acceptance of a mortgage by an attorney to secure fees is not

presently interdicted. The question then is to define the interest in the property that is represented by a mortgage on a tenancy by the entirety executed by only one of the spouses. The difficulty, of course, lies in the nature of a tenancy by the entirety in the context of divorce proceedings, requiring us to consider the extent to which one of the tenants by the entirety may unilaterally take action in contemplation of or pending the divorce proceedings that impairs the ability of the trial judge to deal with that property as a distributable marital asset.

We note at the outset that the problem does not arise in respect of tenancies by the entirety created after the effective date of *N.J.S.A.* 46:3–17.4, approved January 5, 1988, effective ninety days thereafter, and expressly applicable to tenancies by the entirety created on or after the effective date. *L.* 1987, *c.* 357, § 10. *N.J.S.A.* 46:3–17.4 prohibits either spouse from severing, alienating or otherwise affecting their respective interests in the tenancy during the marriage or upon separation without the written consent of the other. *See Freda v. Commercial Trust Co.,* 118 *N.J.* 36, 40, 570 *A.*2d 409 (1990). We would assume that prospective mortgagees, who obviously have the capacity to determine by a title search if a proposed mortgage violates the statute, are chargeable with the consequences of this statutory prohibition.

As *Freda,* however, held, tenancies by the entirety created prior to the statute's effective date are not entitled to the statutory protection, and, accordingly, common-law and otherwise applicable principles govern the consequences of a unilateral encumbrance by one of the tenants.

The nature of a tenancy by the entirety is well established. In sum, it is, during the marriage, essentially an undivided tenancy in common for the joint lives of the spouses subject to the right of survivorship of each. Since the right of survivorship is unilaterally alienable, it is that right, together with the life estate for joint lives, that is subject to execution by a judgment creditor of one but not both of the spouses. In other words, the judgment creditor of the debtor spouse becomes a tenant in common with

the non-debtor spouse during the joint lives of the spouses subject to the non-debtor spouse's right of survivorship. *See generally King v. Greene,* 30 *N.J.* 395, 412, 153 *A.*2d 49 (1959). It is also well settled that if the subject of the tenancy by the entirety is the marital residence, it is not partible at the behest of the judgment creditor of one spouse. And although the judgment creditor may be entitled to an accounting of rents during the non-debtor spouse's exclusive occupancy, that right must be offset by a fair contribution to the mortgage, tax, insurance, and maintenance expenses incurred by the non-debtor spouse—usually a wash. Consequently, the value of one spouse's interest in the tenancy by the entirety during the marriage is ordinarily limited to the survivorship right and is regarded as having nominal value only. *See Newman v. Chase,* 70 *N.J.* 254, 359 *A.*2d 474 (1976).

Upon divorce, the tenancy by the entirety was historically converted, by operation of law, into a tenancy in common, the interest of each spouse then defined as a determinable undivided one-half interest subject to partition or execution sale. *Interchange State Bank v. Riegel,* 190 *N.J.Super.* 139, 144, 462 *A.*2d 198 (App.Div.1983). However, one of the consequences of the court's power to equitably distribute the marital assets accorded by *N.J.S.A.* 2A:34–23 is the supercession of that automatic conversion, leaving to the court the determination of what the parties' respective post-divorce interests in the former tenancy by the entirety will be. *See Sisco v. New Jersey Bank, N.A.,* 158 *N.J.Super.* 111, 122, 385 *A.*2d 890 (App.Div.1978). The question then is the effect of an exercise by the court of that power on the creditor of one of the spouses who holds a lien on that spouse's interest in the former tenancy by the entirety or, conversely, the effect of the existence of such a lien on the court's power to devise and enforce an equitable distribution scheme.

If the creditor's lien is not perfected until after the divorce judgment is entered, as by an execution to satisfy a judgment, the equitable distribution scheme is entitled to priority, and the extent of the executing judgment creditor's lien is limited to whatever

interest in the property the debtor spouse has been accorded by the divorce judgment. *See Sisco, supra,* 158 *N.J.Super.* at 122–123, 385 *A.*2d 890. What, however, of a lien perfected prior to the entry of the judgment? That issue was considered by the Supreme Court in *Freda, supra,* albeit in a different context than that in which the issue before us arises. Consequently, *Freda* must be the beginning point of our analysis.

This is what happened in *Freda.* Patricia and Victor Freda owned their home as tenants by the entirety. In 1978, the husband, needing funds for his failing restaurant, obtained a commercial bank loan secured by a mortgage on the property by forging the wife's name on the mortgage documents. Although the parties were then separated, it does not appear that their divorce action had yet been commenced. The divorce judgment was ultimately entered in 1980 and, by its terms, title to the residence was awarded to the wife, the husband having been ordered to convey his interest to her. Several years later, as a result of the husband's default in the loan payments and his filing of a petition in bankruptcy, the wife discovered and established the forgery. The mortgagee bank then took the position that although the wife's interest in the property survived unencumbered by reason of the forgery, its mortgage was valid as to the husband's interest. The bank further contended that the husband's interest was defined as of the pre-divorce date of the mortgage, namely, a tenancy in common for the spouses' joint lives subject to the right of survivorship of each.

The Supreme Court agreed. It held, however, that the mortgagee's position should not be enhanced by the divorce. Hence it rejected the mortgagee's further contention that as a result of the divorce, its interest, congruent with that of the husband, should be deemed to have been converted into a one-half undivided but partible and executable interest. The Court declared, therefore, that the post-divorce interest of the mortgagee remained, in effect, the same as the lienholder's interest adjudicated by *Newman,* that is, a non-partible tenancy in common for the joint lives of the

spouses, subject to the right of survivorship of each.[1]  The linch-pin of the Court's analysis, of course, is that because it predated the divorce judgment, the perfected lien represented by the mortgage had priority over the equitable-distribution terms of the judgment.

We are persuaded that *Freda* is distinguishable, both on its facts and its legal analysis, from the situation before us, and, accordingly, that that decision does not compel the conclusion that the mortgage here conferred upon the attorney the right of a *Newman* lienholder.  To begin with, it appears, unlike the facts here, that the mortgage in *Freda* was executed prior to the commencement of the divorce action.  Even more significantly, because of the forgery, the *Freda* mortgagee was entirely unaware of the fact that it was taking the interest of only one of the tenants by the entirety.  We think it plain that in the context of a bona fide, commercially reasonable transaction and in the absence of extraordinary circumstances, a lender would be hardly likely to regard the interest of only one of the tenants by the entirety as viable security—the pre-divorce value of that interest is entirely too speculative and hence too minimal.  It is, therefore, in our view, only the imminence of divorce or death of the non-debtor spouse that confers any real value on that interest.  And it is, of course, the imminence of divorce that concerns us here.

██  The real question then, in view of this State's strong commitment to the principle of equitable distribution, is whether, once a divorce complaint has been filed, an event that normally defines the scope and extent of distributable marital assets, *see, e.g., Portner v. Portner,* 93 *N.J.* 215, 220–221, 460 *A.*2d 115 (1983),

---

[1] The Court did not address in *Freda* the consequences of the wife's eventual sale of the property.  Presumably, however, if the rationale of the Court's decision is carried through, the mortgagee would be entitled to half of the proceeds of the sale as a tenant in common since the sale would extinguish the survivorship right.  Nor did the Court directly address the position of the wife in terms of further mortgaging the property or in any other way alienating her interest therein.

a unilateral action by one of the spouses that substantially diminishes the distributable value of a tenancy by the entirety may be permitted to impinge upon the court's power to deal with that property as part of its overall distribution scheme. We are persuaded that such a unilateral effort to affect the distributability of the tenancy in common may not be countenanced.

To begin with, it is clear that, as a general matter, the distributable marital estate is deemed to include assets diverted by one of the spouses in contemplation of divorce and for the purpose of diminishing the other spouse's distributable share. *See Kothari v. Kothari*, 255 *N.J.Super.* 500, 605 *A.*2d 750 (App.Div. 1992), so holding where the subject of the diversion was cash. We recognize that where the remaining marital estate is sufficient to permit debiting the husband's adjudicated share with the amount of diversion, the matter remains essentially one between the parties. Execution of a mortgage, however, necessarily involves the rights of third persons, thus creating additional equitable and legal considerations. We conclude, however, for the following reasons, that a post-complaint mortgage executed by only one of the tenants by the entirety, conveys no more than the interest in the property, if any, accorded the mortgagor-spouse by the equitable distribution judgment.

First, we are satisfied that once the divorce complaint is filed, the marital estate is, not technically but in a practical sense, *in custodia legis.* Either spouse may file a *lis pendens* to protect an interest in assets subject to equitable distribution. *Di Iorio v. Di Iorio*, 254 *N.J.Super.* 172, 603 *A.*2d 127 (Ch.Div.1991). Either spouse may also obtain an order prohibiting the other from alienating or encumbering marital assets. *See generally Goldman v. Goldman*, 275 *N.J.Super.* 452, 646 *A.*2d 504 (App.Div.), *certif. denied,* 139 *N.J.* 185, 652 *A.*2d 173 (1994). Obviously, either spouse may be required to account for the post-complaint disposition of marital assets. *Kothari, supra.* We further note the conceptual relevance of *R.* 1:13–8, which fixes priorities of the parties' liens and encumbrances as of the date of the commence-

ment of the action. While it may be that a spouse's interest in the marital estate does not, by operation of law, constitute a legal encumbrance on the marital assets as of the date of filing of the divorce complaint, nevertheless we think it plain that significant equities in the then-distributable marital estate are thereby created which preclude both spouses from thereafter taking unilateral action for the purpose of diminishing the other's distributable share or, as in the case of a mortgage on jointly owned property, unilateral action that would have the effect of burdening that property with the individual obligations of one of the spouses, and particularly, as here, post-complaint obligations. We are satisfied that *Goldman v. Goldman, supra,* is distinguishable. There the husband's post-complaint use of marital assets in an attempt to save a failing business would have conferred a benefit on both spouses had that effort succeeded. Accordingly, that action was deemed not to constitute a wrongful diversion of marital assets. That is obviously different from the situation with which we are here concerned, namely, a spouse's post-complaint alienation, for his own benefit, of his interest in property which, by its nature, is so intertwined with the spouse's interest therein that the interest of neither can be dealt with without substantially burdening the interest of the other.

We are also satisfied that the equities, in the case of a tenancy by the entirety, strongly favor the interest of the non-debtor spouse over that of the mortgagee. As we have noted, the mortgaging by one spouse of his own interest in the tenancy by the entirety is so unusual a transaction in the arm's length commercial world as to put the mortgagee on notice that there are extraordinary circumstances at work and, most probably, a divorce pending or contemplated. Such a mortgagee, in our view, obviously has a duty of inquiry.[2] Indeed, it would seem to us fair to

---

[2] We are advised that the Administrative Office of the Courts (AOC), through the Superior Court Clerk's Office, maintains computerized Family Action Case Tracking Systems (FACTS), enabling bona fide prospective creditors to determine whether a divorce action has been filed. We are further advised by the

surmise that a mortgagee would never take such an interest without full knowledge of the relevant circumstances. And where that knowledge includes that fact that a divorce complaint has been filed and that the tenancy by the entirety has therefore been placed within the court's dispositional power, a necessary corollary of that knowledge is the understanding, actual or chargeable, that the mortgagor-spouse's interest in the tenancy will be subject to adjudication and not to an operation-of-law equal division. In sum, we are persuaded that a post-complaint mortgagee of one spouse's interest in a tenancy by the entirety takes on notice and subject to equitable distribution.

When, as here, the mortgage is taken by the attorney for one of the parties to ensure future payment of fees, there are other obvious and significant reasons for so limiting the efficacy of the mortgage. If such a mortgage were accorded priority over the eventual equitable distribution scheme, then the non-debtor spouse would be, in effect, involuntarily contributing to the payment of the debtor spouse's legal fees. That is not an acceptable result. Either the parties pay their own fees out of their own assets or the court awards fees based on relevant financial and other circumstances. It is antithetical to the court's exclusive power to award fees to permit one of the spouses to impose the burden of his legal costs directly on the other. We are, therefore, satisfied that our analysis applies to a mortgage on a tenancy by the entirety taken by the attorney for one of the spouses in contemplation of the divorce action as well as after its commencement.

In sum, the interest obtained by appellant when it took a mortgage from defendant of his interest in the tenancy by the entirety was subject to equitable distribution and limited by the

---

AOC that FACTS is available to the public by way of subscription and that the Clerk's office answers specific inquiries. The fact that a divorce complaint has been filed is therefore a matter of searchable public record.

interest in the property awarded defendant by the judgment of divorce.

We do not regard this result as inconsistent with the overruling by *Freda* of this court's decision in *Daeschler v. Daeschler,* 214 *N.J.Super.* 545, 520 *A.*2d 777 (App.Div.1986), since *Daeschler* addressed only the rights of an arm's-length judgment creditor whose lien was perfected during the pendency of the divorce action. Unilateral voluntary action by a spouse during the pendency of the action clearly stands on a footing entirely different from the action taken by a bona fide creditor in respect of a preexisting debt.

The order denying intervention is reversed. We remand to the trial court for entry of an order dismissing the motion for the relief sought by intervention.