747 A.2d 316

JOAN GIBAU, PLAINTIFF–APPELLANT, v. ELEANOR H. KLEIN, ESQ. AND KLEIN AND SMOGER, PC, DEFENDANTS–RESPONDENTS, AND FRANK GIBAU, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued February 14, 2000—Decided March 20, 2000.

Before Judges KEEFE, A.A. RODRÍGUEZ and COLLESTER.

*Frances A. Hartman*, argued the cause for appellant.

*Mario A. Iavicoli*, argued the cause for respondents.

The opinion of the court was delivered by

KEEFE, J.A.D.

This is a legal malpractice case in which plaintiff Joan M. Gibau appeals from the entry of summary judgment in favor of defendants Eleanor H. Klein, Esquire and Klein and Smoger, P.C. (collectively referred to as Klein).[1] The appeal requires that we

---

[1] Defendant Frank Gibau did not appear in the matter and default was entered against him.

determine whether the trial judge correctly held that Klein was not liable as a matter of law for failing to record the final judgment of divorce. In essence, the trial court found that post-divorce judgments against plaintiff's former husband, defendant Frank Gibau (Frank), did not become liens against the marital home that passed to plaintiff by reason of the final divorce judgment. Thus, plaintiff was not harmed by Klein's failure to record the judgment. We affirm the judgment under review, but for reasons other than those stated by the trial judge.

The relevant facts are undisputed. Klein represented plaintiff in divorce proceedings against Frank culminating in a judgment of divorce filed with the Clerk of the Superior Court on January 6, 1978. The judgment provided, among other things, that Frank "shall forthwith transfer and convey to plaintiff all of his right, title and interest in and to the former marital residence, located at 106 Devon Road, Cinnaminson, New Jersey." It is undisputed that Frank did not comply with the order and that Klein did not record the final judgment in the book of deeds in Burlington County, where the property was located.

In 1995, plaintiff entered into a contract to sell the former marital home to a third party. A judgment search revealed that money judgments were taken against Frank after the entry of the final judgment of divorce. The title company engaged by the purchaser of plaintiff's property took the position that the judgments against Frank were liens on the property and refused to insure the title unless they were satisfied.[2] In light of that development, plaintiff authorized her attorney to compromise the judgments. The attorney was successful in reducing the amount owed on the judgments, but plaintiff was required to pay $22,500 out of the proceeds of the sale to satisfy the balance of the judgments against Frank.

---

[2] Apparently, Frank did transfer his interest in the property to plaintiff sometime in December 1991. The judgments against him, however, were docketed between the entry of the final judgment of divorce and the 1991 transfer.

Plaintiff then instituted this suit against Klein and Frank. The essence of plaintiff's complaint against Klein was that Klein negligently failed to record the judgment of divorce in the Burlington County book of deeds. On the day trial was scheduled to commence, Klein raised the issue now under review. Klein claimed that recording the divorce judgment was unnecessary because the transfer of title to plaintiff occurred automatically by operation of law, and the docketing of the judgment was notice to the world. The trial judge adjourned the trial and ordered the parties to file briefs. After considering the parties' briefs and entertaining oral argument, the judge dismissed the case finding, essentially, that the judgments taken against Frank were not liens against the property that plaintiff was required to pay. Accordingly, nothing Klein did or failed to do caused damage to plaintiff. This appeal followed.

■ At common law, money judgments did not constitute liens against real property. Judgment liens are creatures of statute. *Joseph Harris & Sons, Inc. v. Van Loan*, 23 *N.J.* 466, 470, 129 *A.2d* 571 (1957). It is by virtue of statute that money judgments become liens on real estate "from the time of the actual entry of such judgment on the minutes or records of the court." *N.J.S.A.* 2A:16–1. In order to become a lien, however, the real property must be "*held*" by the judgment debtor[.]" *New Brunswick Sav. Bank v. Markouski*, 123 *N.J.* 402, 412, 587 *A.2d* 1265 (1991)(emphasis added). It is axiomatic that if the Cinnaminson property was not "held" by Frank at the time the judgments against him were taken, they were not liens on plaintiff's property. The question, therefore, is whether Frank still held an interest in the property when the judgments were taken against him.

■ As noted earlier, Frank failed to comply with the final judgment of divorce and "forthwith transfer and convey" his interest in the Cinniminson property to plaintiff. *N.J.S.A.* 2A:16–7 provides that:

When a judgment of the superior court shall be entered for a conveyance, release or acquittance of real estate or an interest therein, and the party against whom the

judgment shall be entered shall not comply therewith by the time appointed, or within 15 days after entry of the judgment if no time be appointed therein, the judgment shall be considered and taken, in all courts of the state to have the same operation and effect, and be available as if the conveyance, release or acquittance had been executed conformably to the judgment.

When a judgment triggering this statute is docketed, it becomes self-operative without the need for further action. *See King v. Greene*, 30 *N.J.* 395, 398, 153 *A.2d* 49 (1959)(holding that where the court ordered the wife to execute a deed to herself and her husband as tenants by the entirety, and she failed to do so, the decree was "self-operative" and had the effect of making the husband a tenant by the entirety).

■ The final judgment of divorce in this case was docketed with the Clerk of the Superior Court as authorized by law. *N.J.S.A.* 2A:16–12. Thus, it is clear that, as between plaintiff and Frank, plaintiff was the sole owner of the property from the fifteenth day after the judgment was entered. But that does not necessarily decide the question of whether plaintiff's claim is superior as to third parties, such as judgment creditors. Unlike various provisions of the Recording Act, *see, e.g., N.J.S.A.* 46:16–1.1 and *N.J.S.A.* 46:21–1, the Legislature did not create a priority in favor of litigants who benefitted from a judgment encompassed by *N.J.S.A.* 2A:16–7. Nor did *King, supra*, address the question of whether the docketing of the decree, standing alone, places the beneficiary of the statute in a superior position to creditors who thereafter obtain judgments against the losing party to the litigation.

Klein argues that docketing the judgment resulting from proceedings to which *N.J.S.A.* 2A:16–7 applies is sufficient notice to subsequent judgment creditors and purchasers for value without notice. Klein relies upon *New Brunswick Sav. Bank, supra*, to argue that the recording of the judgment functions as notice to the world. Indeed, in that case, the Court said that "[t]he judgment is a binding judicial determination of the rights and duties of the parties to the action and, when recorded on the docket of the Clerk of the Superior Court, functions as notice of the debtor-

creditor relationship." *New Brunswick Sav. Bank, supra,* 123 *N.J.* at 411, 587 *A.*2d 1265 (citation omitted). Klein, however, over-reads the Court's statement. In the passage just quoted, the Court was discussing the effect of recording money judgments. *Id.* at 411–12, 587 *A.*2d 1265.

The effect of recording non-money judgments, such as the one obtained by plaintiff in this case, in terms of notice to third parties is quite another matter. In *Sonderman v. Remington Const. Co., Inc.,* 244 *N.J.Super.* 611, 616, 583 *A.*2d 367 (App.Div.1990), *aff'd,* 127 *N.J.* 96, 603 *A.*2d 1 (1992), this court held, in a different but analogous context, that a purchaser for value was required to search not only the docket book for money judgments, but also all dockets and records resulting from non-money judgments for liens on real estate. That is essentially what Klein claims should occur here. The Supreme Court, however, disagreed with us. It held that our "statement [was] at odds with current searching practice," and that, irrespective of whether a search of docketed non-money judgments could reveal the existence of a judgment affecting real property, the Court saw "no reason to impose a greater responsibility on title searchers than is imposed by standard practice." *Sonderman v. Remington Const. Co., Inc.,* 127 *N.J.* 96, 110, 603 *A.*2d 1 (1992). Accordingly, it concluded that an order vacating an *in rem* foreclosure judgment must be recorded in the same manner as a deed in order to give notice to subsequent purchasers for value. *Ibid.*

Plaintiff claims, essentially, that as to judgment creditors, her right is not superior unless the instrument giving her sole title to the property was recorded. Plaintiff asserts that Klein's failure to record the judgment of divorce in the Burlington County book of deeds resulted in voiding the transfer occasioned by the operation of *N.J.S.A.* 2A:16-7 with respect to the subsequent recorded judgments against Frank.

In making that argument, she relies, in part, upon the provisions of *N.J.S.A.* 46:22-1. Her reliance on that statute, however, is misplaced. The statute indeed gives judgment creditors a

priority, but only against persons who claim an interest in the property under a "deed or instrument of the nature or description set forth in section 46:16–1 [that was not recorded] ... in the office of the county recording officer in which the affected real estate ... is situate[.]" *Ibid.; see also N.J.S.A.* 46:21–1 (providing that recorded deeds or instruments "of the nature or description set forth in section 46:16–1 ... shall, from that time, be notice to all subsequent judgment creditors, purchasers and mortgagees"). The divorce judgment entered in 1978 is not one of the "deeds or instruments" described with specificity in *N.J.S.A.* 46:16–1 a to e, nor is it an instrument that "may have been or may be directed by any statute to be acknowledged or proved and recorded" under the more generic wording of subparagraph f. Plaintiff admitted as much at oral argument before us.

■ Plaintiff contends, however, that the final divorce judgment does fit within the category of "decrees ... and ... final judgments ... which have been filed with the Clerk of the Superior Court ... relating to or in any way affecting title to real estate" as described in *N.J.S.A.* 46:16–1.1. The statute provides that such judgments

> may be recorded as deeds of conveyance in the office of the county recording officer of the county wherein the real estate is situate, and shall be indexed in the names of the parties to the cause as set forth in the [ ] judgment ... which when recorded shall from that time be notice to all subsequent judgment creditors, purchasers and mortgagees of the existence and contents thereof.
>
> [*Ibid.*]

Undoubtedly, the purpose of the statute is to provide a mechanism for recording instruments affecting title to property that do not meet the formality of acknowledgment or proof as is required for the documents identified in *N.J.S.A.* 46:16–1a to f. We agree with plaintiff that the final divorce judgment could have been recorded pursuant to *N.J.S.A.* 46:16–1.1, and the recording would have provided notice to judgment creditors.[3] Klein argues that the use

---

[3] This statute was the underpinning of the Court's discussion in *Sonderman, supra,* where the Court held that it was imperative that a judgment vacating an

of the permissive phrase "may be recorded" in *N.J.S.A.* 46:16–1.1 makes the choice of recording optional. The argument is, however, clearly without merit in light of the Supreme Court's holding in *Sonderman, supra,* 127 *N.J.* at 110, 603 *A.*2d 1. Stated simply, if the judgment affecting title to real property is not recorded, it may not serve as notice to subsequent purchasers for value or judgment creditors. " 'Generally speaking, *and absent any unusual equity,* a court should decide a question of title such as this in the way that will best support and maintain the integrity of the recording system.' " *Sonderman, supra,* 127 *N.J.* at 108, 603 *A.*2d 1 (quoting *Palamarg Realty Co. v. Rehac,* 80 *N.J.* 446, 453, 404 *A.*2d 21 (1979)).

Therefore, we would end the discussion at this point, as the parties' briefs have done, and reverse the judgment in Klein's favor, if the 1978 judgment was other than a judgment affecting the equitable distribution of marital property. The special nature of a judgment ordering the equitable distribution of property, and the equities it creates in the non-debtor spouse have been long recognized in this State. *See Sisco v. New Jersey Bank, N.A.,* 158 *N.J.Super.* 111, 385 *A.*2d 890 (App.Div.1978). For example, in *Sisco,* the judgment directed the marital property to be sold with 60% of the net proceeds to be distributed to the wife and 40% to the husband. *Id.* at 114, 385 *A.*2d 890. After the equitable distribution judgment was entered, a bank took a judgment against the husband, which it perfected by a writ of execution and levy on the husband's interest in the property. *Ibid.* The bank claimed that its lien was on the husband's fifty percent interest in the property because the judgment made the parties tenants in common. *Id.* at 122, 385 *A.*2d 890. This court disagreed. We held:

In this case the provision in the judgment was for the sale of the marital home, with the net proceeds to be divided 60% to the former wife and 40% to the other

---

*in rem* foreclosure judgment must be recorded in the same manner as a deed in order to serve notice to subsequent purchasers and judgment creditors. 127 *N.J.* at 110, 603 *A.*2d 1.

spouse. This was tantamount to a conveyance to the wife, upon the termination of the tenancy by the entirety, of an undivided 60% interest in the realty as a tenant in common, to be realized, however, from the net proceeds of the sale of the property. To the extent necessary to secure that interest pending the sale, the divorce judgment imposed an equitable lien in plaintiff's favor upon the judgment debtor's right, title and interest in the marital home.

[*Ibid.*]

Thus, the court held that a levying judgment creditor of the debtor spouse "acquires no greater rights in the property than those of the debtor spouse." *Ibid.* (citation omitted).

The Court's holding in *Freda v. Commercial Trust Co.*, 118 *N.J.* 36, 570 *A.*2d 409 (1990) does not affect the viability of *Sisco.* In *Freda*, the Court agreed that "[u]nder principles of equitable distribution, a wife may properly receive the marital home as part of her share of the marital assets." *Id.* at 46, 570 *A.*2d 409. The question was what effect did a mortgage on the husband's interest in the tenancy by the entirety, recorded and perfected long before the judgment of equitable distribution, have on the judgment transferring title to the wife. The Court held that such prior liens against the husband cannot be destroyed by the transfer of the marital home from the debtor spouse to the non-debtor spouse. *Ibid.* Rather, the wife takes the property subject to the judgment. The judgment creditor's rights, however, are subject to the wife's right of survivorship. *Id.* at 48–49, 570 *A.*2d 409. While *Freda*, like *Sisco*, does not address the question of notice to subsequent judgment creditors of the husband, it adds to our understanding that an equitable distribution judgment substantially alters the normal incidents of title.

■ As this court recently observed:

[O]ne of the consequences of the court's power to equitably distribute the marital assets accorded by *N.J.S.A.* 2A:34-23 is the supersession of that automatic conversion [of the tenancy by the entirety to a tenancy in common], leaving to the court the determination of what the parties' respective post-divorce interests in the former tenancy by the entirety will be.

[*Vander Weert v. Vander Weert*, 304 *N.J.Super.* 339, 346, 700 *A.*2d 894 (App.Div. 1997) (citing *Sisco, supra*, 158 *N.J.Super.* at 122, 385 *A.*2d 890).]

Here, as in *Freda*, the Family Court judge determined that considerations of equity required the plaintiff to have sole title to

the marital property after divorce. Accordingly, Frank had no interest in the Cinnaminson property after the judgment of divorce was entered. Indeed, the *Vander Weert* court would have extinguished a judgment lien recorded against the debtor husband, but not perfected before the divorce judgment was entered. It held:

> [I]f the creditor's lien is not perfected until after the divorce judgment is entered, as by an execution to satisfy a judgment, the equitable distribution scheme is entitled to priority, and the extent of the executing judgment creditor's lien is limited to whatever interest in the property the debtor spouse has been accorded by the divorce judgment.

[*Id.* at 346–47, 700 *A.*2d 894.]

It distinguished its holding from *Freda,* by noting that the lien in *Freda* had been perfected before the judgment of divorce in that case, whereas the hypothetical judgment under discussion in *Vander Weert* was docketed, but not perfected before the judgment of divorce was entered. *Id.* at 347, 700 *A.*2d 894.

It is abundantly clear, therefore, that the judgments in this case, which were not even docketed before the divorce judgment was entered, did not constitute a lien on the marital home since the property was not held by Frank at the time the judgments were taken. Our holding here, which is limited to judgments entered for equitable distribution of property in dissolution cases, does no violence to the Recording Act. On the remote chance that a creditor of Frank conducted a title search before extending credit to him, the creditor would have at least discovered that Frank's interest in the Cinniminson property was at no time greater than a tenancy by the entirety. We agree with the *Vander Weert* court that in such circumstances "a bona fide, commercially reasonable ... lender would be hardly likely to regard the interest of only one of the tenants by the entirety as viable—security the pre-divorce value of that interest is entirely too speculative and hence too minimal." *Vander Weert, supra,* 304 *N.J.Super.* at 348, 700 *A.*2d 894.

In conclusion, we are constrained to affirm the judgment under review. The judgments taken against Frank after the divorce

judgment was entered were not liens against the marital home. Accordingly, Klein's failure to record the divorce judgment in the book of deeds did not destroy the priority that the divorce judgment afforded plaintiff as to subsequent judgment creditors of Frank. Our constraint does not stem from any uncertainty we have in the legal analysis of plaintiff's rights under the divorce judgment, but from the fact that plaintiff unfortunately chose to satisfy those judgments rather than contest the title company's position.

Affirmed.